STATE OF NORTH CAROLINA v. ROBERT STEVENSON DOISEY

No. COA03-119

(Filed 3 February 2004)

1. **Criminal Law; Prisons and Prisoners— securing attendance of incarcerated defendant—not a speedy trial motion**

    N.C.G.S. § 15A-711 does not guarantee a prisoner the right to a speedy trial within a specified period of time, and this defendant's request under the statute should not have been treated as a speedy trial motion. A prosecutor complies with the statute by making a written request to secure defendant's presence at the trial within six months of defendant's request that he do so, whether or not the trial actually takes place during the statutory period. This case was remanded for a determination of whether the prosecutor complied with the statute; the Attorney General's assumption of the case was subject to defendant's previously filed request and no further service was necessary.

2. **Constitutional Law— speedy trial—no prejudice from delay**

    A defendant's constitutional right to a speedy trial was not violated by a two-year delay between the offenses and trial where defendant did not show that the delay in any way hampered his

ability to present a defense and did not show neglect or wilfulness by the prosecution.

### 3. Assault— instructions—boxcutter as dangerous weapon

An instruction in an assault prosecution that a boxcutter was a deadly weapon as a matter of law was supported by the testimony of the officers attacked by defendant.

Appeal by defendant from judgment entered 28 June 2002 by Judge Dwight L. Cranford in Halifax County Superior Court. Heard in the Court of Appeals 1 December 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Mary D. Winstead, for the State.*

*Paul Pooley for defendant-appellant.*

LEVINSON, Judge.

Robert Doisey (defendant) appeals from convictions of assault with a deadly weapon on a government official. We find no error in part and reverse and remand in part.

The pertinent facts are as follows: In 1997, defendant was sentenced to a prison term of 339 to 416 months following conviction of first degree statutory sex offense. Defendant subsequently filed a motion for appropriate relief. On 16 December 1999 a hearing on defendant's motion was conducted at the Halifax County courthouse. Following the hearing, the trial court denied defendant's motion and ordered him returned to custody. The present charges arose from a disturbance that occurred as law enforcement officers were attempting to return defendant to a jail cell.

Two officers, Sgt. Andrew Pittman and Lt. Wes Tripp of the Halifax County Sheriff's Department, escorted defendant to the jail elevator. At the elevator, Pittman was briefly distracted by the need to use a key in the elevator; he then turned around and saw defendant trying to cut his own throat with a razor attached to a box-cutter or utility knife. When the officers tried to retrieve the box-cutter, defendant began shouting that he would not return to prison and urging the officers to shoot him. Sgt. Eddie Buffaloe, Detective William Wheeler, and probation officer Rodney Robertson joined the effort to subdue defendant, who had meanwhile dashed out the door of the courthouse. Each time the officers approached the defendant, he lunged at them with the razor, shouting at them to shoot him. After

STATE v. DOISEY

[162 N.C. App. 447 (2004)]

several minutes, the disturbance was quelled when Sgt. Buffaloe shot defendant in the leg, enabling the officers to restrain defendant, confiscate the razor knife, and restore order.

On 5 June 2000 defendant was indicted on six counts of assault with a deadly weapon on a government officer and one count of felonious escape. Following a jury trial, defendant was convicted of three counts of assault with a deadly weapon on a government officer, for the assaults on Tripp, Pittman, and Buffaloe, and was acquitted of the other charges. He was sentenced to a consolidated term of 34 to 41 months for the three assaults, to be served at the expiration of the prison sentence for which he was already incarcerated. Defendant appeals.

[1] Defendant presents three arguments on appeal. He argues first that the trial court erred by denying his motion for dismissal of the charges against him on the grounds that the prosecutor failed to comply with the provisions of N.C.G.S. § 15A-711 (2003). Resolution of this issue requires analysis of G.S. § 15A-711, which provides in pertinent part:

§ 15A-711. Securing attendance of criminal defendants confined in institutions within the State; requiring prosecutor to proceed:

(a) When a criminal defendant is confined in a penal or other institution . . . and his presence is required for trial, the prosecutor may make written request . . . for temporary release of the defendant to . . . [a] law-enforcement officer who must produce him at the trial. The period of the temporary release may not exceed 60 days. . . .

. . . .

(c) A defendant who is confined in an institution . . . pursuant to a criminal proceeding and who has other criminal charges pending against him may, by written request filed with the clerk of the court where the other charges are pending, require the prosecutor prosecuting such charges to proceed pursuant to this section. A copy of the request must be served upon the prosecutor in the manner provided by the Rules of Civil Procedure, G.S. 1A-1, Rule 5(b). If the prosecutor does not proceed pursuant to subsection (a) within six months from the date the request is filed with the clerk, the charges must be dismissed.

G.S. § 15A-711(a) and (c).

G.S. § 15A-711 has sometimes been characterized as a "speedy trial" statute. However, since the 1989 repeal of North Carolina's speedy trial statutes, N.C.G.S. § 15A-701 *et seq.*, a defendant's right to a speedy trial arises under the U.S. Constitution, *State v. Joyce*, 104 N.C. App. 558, 568, 410 S.E.2d 516, 522 (1991), and the North Carolina Constitution, *State v. Grooms*, 353 N.C. 50, 62, 540 S.E.2d 713, 721 (2000). Therefore, although certain cases decided during the tenure of the State speedy trial statute may suggest otherwise, G.S. § 15A-711 does not guarantee an imprisoned criminal defendant the right to trial within a specific time. Rather, the statute requires that, within six months of a prisoner's properly filed request, the prosecutor "proceed pursuant to subsection (a)." Subsection (a) in turn directs the prosecutor to "make written request . . . for temporary release of the defendant." G.S. § 15A-711(a). Accordingly, the North Carolina Supreme Court has held that "the essential requirement of the statute, [is] that the defendant be temporarily released from the correctional institution and returned to the custody of an appropriate local law enforcement officer within six months of filing the request." *State v. Pickens*, 346 N.C. 628, 648, 488 S.E.2d 162, 173 (1997) (citing *State v. Dammons*, 293 N.C. 263, 267, 237 S.E.2d 834, 837 (1977)). In *Dammons*, the Court held that G.S. § 15A-711 required the prosecutor to "proceed . . . not to trial but to request a defendant's temporary release for trial." *Dammons, id.* Therefore, the charges against the defendant are not required to be dismissed merely because defendant's trial does not occur within a particular timeframe. *Dammons, id.* (no violation of statute where defendant's "trial was initially scheduled to begin . . . within the 60-day[s] . . . authorized for a temporary release[, but] . . . the trial was continued [and] defendant was presumably returned to the custody of the [DOC]"). *See also State v. Turner*, 34 N.C. App. 78, 85, 237 S.E.2d 318, 322-23 (1977):

> The State complied with G.S. 15A-711(a) within the six-month limitation. The fact that the trial was not until 1 November 1976 was not a violation of this provision. The State *proceeded* within the six-month limitation when it made the request for the defendant[.]

We conclude that G.S. § 15A-711 does not guarantee a prisoner the right to a "speedy trial" within a specified period of time. We further conclude that a prosecutor complies with the statute by making a written request to secure defendant's presence at trial within six months of the defendant's request that he do so, whether

or not the trial actually takes place during the statutory period of six months plus the sixty days temporary release to local law enforcement officials.

Against this backdrop, we next consider the facts of the instant case. Defendant was indicted on 5 June 2000. On 27 July 2000 defendant filed a request for the prosecutor to proceed pursuant to G.S. § 15A-711, and a motion for dismissal of charges based on alleged violation of defendant's U.S. constitutional right to a speedy trial. On 20 September 2000 a hearing was conducted on defendant's motion before Judge Cy A. Grant, Sr. We conclude that at the hearing on 20 September 2000, the trial court misapplied G.S. § 15A-711.

First, the underlying premise—that defendant's request under G.S. § 15A-711 constituted a "motion" subject to review by the trial court—was erroneous. The defendant submitted his request to the trial court for a ruling, and on 23 October 2000 the trial court ruled that "Defendant's Request for a Speedy Trial . . . is denied." As previously discussed, defendant's request should not have been treated as a demand for "speedy trial." Moreover, the statute provides no basis either for the defendant's submission of his request to the trial court, or for the trial court's entry of an order purporting to "deny" the request. G.S. § 15A-711(c) does not require a defendant to, *e.g.*, "apply to the trial court" or "file a motion seeking" that the prosecutor comply with the statute. Rather, the statute sets out a prisoner's statutory right to formally request that the prosecutor make a written request for his return to the custody of local law enforcement officers in the jurisdiction in which he has other pending charges.

Secondly, at the start of the hearing on 20 September 2000, the prosecutor stated—and defense counsel and the trial court apparently accepted this as accurate—that after a defendant files a request under G.S. § 15A-711, he "must be tried within sixty days" or else the charges must be dismissed. The remainder of the hearing was conducted under the misapprehension that the clock "was running" on defendant's "motion for a speedy trial." As discussed above, this was error. The only time period that began to run with the filing of defendant's request was for the prosecutor to write to the Department of Corrections seeking defendant's temporary return to Halifax County.

On 23 October 2000, the trial court entered an order denying defendant's July, 2000, motion to dismiss charges for violation of his U.S. constitutional right to a speedy trial; "denying" his request under G.S. § 15A-711; and "order[ing] that the office of the District Attorney

. . . [be] prohibited from handling the prosecution of the Defendant in the above captioned cases" and "that the prosecution of these matters be handled by the Attorney General." Although the Attorney General's office ultimately prosecuted the case, the trial court's order requiring the Attorney General to handle the case was vacated on 17 November 2000.

We next consider defendant's second set of motions. On 27 September 2000, before the trial court entered its orders denying defendant's request under G.S. § 15A-711 and directing the Attorney General to prosecute the case, the defendant filed a new motion pursuant to G.S. § 15A-711. This motion was filed with the clerk of court, and served on the district attorney.

Preliminarily, we address the State's argument that the defendant's request was not properly served on the prosecutor because he served it on the Halifax County District Attorney's office, rather than on the Attorney General. It is true that the "failure to serve a section 15A-711(c) motion on the prosecutor as required by the statute bars relief for a defendant." *State v. Pickens*, 346 N.C. 628, 648, 488 S.E.2d 162, 173 (1997).

In the instant case, as of the 20 September 2000 hearing, the Halifax County District Attorney had not even contacted the Attorney General concerning the case, nor sought his approval to delegate the prosecution to a member of the Special Prosecution Division. The record thus fails to support the proposition that, as of 20 September 2000, when the Attorney General had not been informed of a potential request to prosecute the case, the District Attorney's office was no longer a proper party to accept service of defendant's notice pursuant to G.S. § 15A-711(c). " 'No attorney or solicitor can withdraw his name, after he has once entered it on the record, without the leave of the court. And while his name continues there, the adverse party has a right to treat him as the authorized attorney or solicitor, and the service of notice upon him is as valid as if served on the party himself.' " *Griffith v. Griffith*, 38 N.C. App. 25, 28, 247 S.E.2d 30, 33 (1978) (quoting *United States v. Curry*, 47 U.S. 106, 110, 12 L. Ed. 363, 365 (1847)).

On 27 September 2000, when defendant served his second notice on the prosecutor of his request under G.S. § 15A-711(c), there had been no formal transfer of authority for the case to the Attorney General. We conclude that the defendant properly served the prosecutor with the request under G.S. § 15A-711. The record indicates that

at some time thereafter the Attorney General agreed to prosecute this case. However, we find unreasonable the suggestion that, upon the Attorney General's agreement to assist a local District Attorney with the prosecution of a case, a G.S. § 15A-711 request previously filed would need to be re-served on the Attorney General. Instead, the Attorney General's office assumes the prosecution of the case subject to a previously filed G.S. § 15A-711 request.

Defendant was tried in July, 2002. At the beginning of the trial, the court denied defendant's motion to dismiss for failure of the prosecutor to comply with his requests under G.S. § 15A-711. At no time in the present case has the trial court properly considered defendant's motion to dismiss on its merits. We further conclude that the current record is inadequate to allow this Court to resolve this issue.

The appropriate inquiry upon a motion to dismiss for failure to comply with G.S. § 15A-711 is whether the prosecutor made a written request for defendant's transfer to a local law enforcement facility within six months after defendant files his request. However, the record on appeal does not indicate what proceedings, if any, were conducted between November, 2000 and May, 2002, when the case was calendared for trial. In addition, we cannot determine from the record what, if anything, the prosecutor did to comply with defendant's requests under G.S. § 15A-711. Nor is it evident at what junctures, if any, defendant was in the physical custody of Halifax County subsequent to the G.S. § 15A-711 requests, something that might impact the necessity of making a written request for the return of defendant from another facility. All these deficiencies in the record are likely a function of misinterpretations of G.S. § 15A-711, specifically: (1) that a request under the statute constitutes a "motion" subject to the trial court's approval or denial, and (2) that a request under G.S. § 15A-711 guarantees a defendant a "speedy trial" within sixty days or some other specific time period, after which charges must be dismissed if the trial has not taken place.

We conclude that the trial court's denial of defendant's motion to dismiss as a result of violations of G.S. § 15A-711 must be reversed and remanded for a new hearing. The trial court should determine whether the prosecutor complied with the provisions of G.S. §. 15A-711. Given the current posture of this appeal, we have no occasion to comment on the impact, if any, of a prosecutor's reliance upon an order "denying" a G.S. § 15A-711 request in a subsequent motion to dismiss for failure to comply with the statute.

**[2]** In the interests of judicial economy, and in recognition of the possibility that the trial court will determine that the prosecutor complied with G.S. § 15A-711, we elect to review defendant's remaining two arguments. Defendant argues next that the State violated his U.S. Constitutional right to a speedy trial. We disagree.

On 24 July 2000, 26 September 2000, and 18 June 2002 defendant filed motions to dismiss under N.C.G.S. § 15A-954 (2003) for the alleged violation of his right to a speedy trial under the N.C. and U.S. Constitutions. Under G.S. § 15A-954(a)(3):

> (a) The court on motion of the defendant must dismiss the charges stated in a criminal pleading if it determines that:
>
> . . . .
>
> (3) The defendant has been denied a speedy trial as required by the Constitution of the United States and the Constitution of North Carolina.

In its determination of whether there has been a violation of the defendant's Sixth Amendment right to a speedy trial, the trial court must consider the following: "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice resulting from the delay." *Pickens*, 346 N.C. at 649, 488 S.E.2d at 174 (quoting *State v. McCollum*, 334 N.C. 208, 231, 433 S.E.2d 144, 156 (1993)). Further:

> [N]one of the four factors identified above [is] either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant.

*Barker v. Wingo*, 407 U.S. 514, 533, 33 L. Ed. 2d 101, 118 (1972). Thus, "length of the delay is not *per se* determinative of whether a speedy trial violation has occurred." *State v. Webster*, 337 N.C. 674, 678, 447 S.E.2d 349, 351 (1994).

Regarding the determination of whether the defendant has been prejudiced by delay, the North Carolina Supreme Court has noted that a speedy trial serves " '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.' " *State v. Spivey*, 357 N.C. 114, 122, 579 S.E.2d 251, 256 (2003) (quoting *Webster*, 337 N.C. at 680-81, 447 S.E.2d at 352).

Further, the defendant "must show actual, substantial prejudice." *Id.* (citation omitted).

In the instant case, almost two years passed between the date of the offenses and trial, during which time defendant several times asserted his constitutional right to a speedy trial. However, this is not dispositive, and must be balanced "against defendant's failure to show actual or substantial prejudice resulting from the delay[.]" *State v. Goldman*, 311 N.C. 338, 345, 317 S.E.2d 361, 365 (1984). Defendant alleges prejudice only in his suffering "anxiety and concern," but does not assert that the delay in any way hampered his ability to present a defense to the charges. We also note that, regardless of the speed with which the State prosecuted the instant offenses, defendant would still be serving an unrelated 30 to 40 year sentence.

Defendant also argues that the State "failed to offer any reasons" for the delay in bringing him to trial. However, the defendant "has the burden of showing that the reason for the delay was the neglect or willfulness of the prosecution." *Webster*, 337 N.C. at 679, 447 S.E.2d at 351. Defendant has not met this burden. Upon balancing the relevant factors, we conclude that defendant's constitutional right to a speedy trial was not violated. This assignment of error is overruled.

---

[3] Finally, defendant argues that the trial court erred by instructing the jury that a box-cutter is a deadly weapon as a matter of law.

Defendant was convicted of felonious assault on a law enforcement officer with a deadly weapon, in violation of N.C.G.S. § 14-34.2 (2003), which provides in pertinent part that:

[A]ny person who commits an assault with a firearm or any other deadly weapon upon an officer or employee of the State . . . in the performance of his duties shall be guilty of a Class F felony.

"[A]n essential element of the offense of assault with a deadly weapon on a government official is the use of a firearm or other deadly weapon to commit the assault." *State v. Brogden*, 137 N.C. App. 579, 581, 528 S.E.2d 391, 392 (2000). "A dangerous or deadly weapon 'is generally defined as any article, instrument or substance which is likely to produce death or great bodily harm.'" *State v. Wiggins*, 78 N.C. App. 405, 406, 337 S.E.2d 198, 199 (1985) (quoting *State v. Sturdivant*, 304 N.C. 293, 301, 283 S.E.2d 719, 725 (1981)). "If there is a conflict in the evidence regarding either the nature of the weapon or the manner of its use, with some of the evidence tending

to show that the weapon used or as used would not likely produce death or great bodily harm and other evidence tending to show the contrary, the jury must, of course, resolve the conflict." *State v. Palmer*, 293 N.C. 633, 643, 239 S.E.2d 406, 413 (1977).

However, if the " 'alleged deadly weapon and the manner of its use are of such character as to admit of but one conclusion, the question as to whether or not it is deadly . . . *is one of law, and the Court must take the responsibility of so declaring.*' " *State v. Torain*, 316 N.C. 111, 119, 340 S.E.2d 465, 470 (1986) (quoting *State v. Smith*, 187 N.C. 469, 470, 121 S.E. 737, 737 (1924)) (jury properly instructed that box cutter held to victim's throat was deadly weapon *per se*). Under appropriate factual circumstances, a box-cutter may be such a weapon. *State v. Adams*, 156 N.C. App. 318, 323-24, 576 S.E.2d 377, 381 (evidence that defendant tried to cut victim's face with utility knife "supports the trial judge's instruction that a box cutter is a deadly weapon *per se*"), *disc. review denied*, 357 N.C. 166, 580 S.E.2d 698 (2003).

In the present case, Sgt. Pittman testified that defendant had "lunge[d] at" the law enforcement officers "like he was going to cut [them]." Lt. Tripp testified that defendant "faced [him] and lunged and swiped at [his] midsection with the box cutter actually hitting [his] shirt" and that he was "scared." Tripp also testified that defendant "charg[ed at Sgt.] Buffaloe with the box-cutter" and continued to "charge" at him even after Buffaloe backed up. Sgt. Buffaloe testified that defendant was within six feet of him and "would lunge towards us and swing the box-cutter at us and attempt to cut us." At some point during the disturbance, Buffaloe lost his footing and slipped to one knee as defendant continued to advance on him and "raised the box cutter over his head." We conclude that the officers' testimony supported the trial court's instruction to the jury that the razor knife was a deadly or dangerous weapon as a matter of law. This assignment of error is overruled.

For the reasons discussed above, we remand for a new hearing on defendant's motion to dismiss for violation of the provisions of G.S. § 15A-711. We find no other error in defendant's trial.

Reversed and remanded in part, no error in part.

Chief Judge Eagles concurred prior to 31 January 2004.

Judge MARTIN concurs.