**STATE of Iowa, Appellee,**

v.

**Michael Daniel GREENE, Appellant.**

No. 04–0067.

Supreme Court of Iowa.

Feb. 3, 2006.

Linda Del Gallo, State Appellate Defender, and Stephan J. Japuntich, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary E. Tabor, Assistant Attorney General, Rosalise Olson, County Attorney, and Kristin Rienfeld, Assistant County Attorney, for appellee.

LARSON, Justice.

Michael Greene was convicted of stalking with a dangerous weapon, in violation of Iowa Code section 708.11(3)(*b*)(2) (2003), and two counts of second-degree criminal mischief under Iowa Code section 716.4. He appealed, and we transferred his case to the court of appeals, which affirmed. On further review, we vacate

the decision of the court of appeals, affirm the judgment of the district court in part and reverse it in part, and remand.

### I. *Facts and Prior Proceedings.*

The facts, when viewed in the light most favorable to the verdicts, show that Greene and Kathy Miller lived together for a period of time in Greene's home. When the relationship soured and Kathy moved out, Greene threatened to "do something" if Miller refused to reconcile. Kathy's house and car were spray painted with graffiti, and personal effects she had left at Greene's house began to appear, damaged, at various places around town. A support post for Kathy's hammock was cut off, apparently with a chainsaw. Greene sent harassing letters to Kathy and to members of her family and friends. A rock was thrown through a window at her home, and a dead skunk was thrown into her home. Greene obtained a restraining order against Kathy, claiming, falsely, that she had harassed him. Metal signs were posted around the community bearing derogatory comments about Kathy. A search of Greene's home revealed a chainsaw, mail addressed to Kathy, apparently stolen from her mailbox, and other items.

Most significant among the evidence presented at the trial were steel shards that had been impaled in Kathy's car tires and those of her parents' tires as well. The shards are made of sheet steel, approximately three-quarters of an inch wide at their base and three inches long, tapered to a razor-sharp point. The shards are welded to steel bases to keep them upright. These shards had been propped up against the tires to flatten them as the cars were moved. As would be expected, the tires went flat almost immediately. The components of the shards were consistent with sheet steel available at Greene's place of employment. These shards play a prominent role on this appeal because the jury found that Greene, while stalking his victim, was "in possession of a dangerous weapon."

This evidence, as well as other evidence not specifically set out in this opinion, easily supports a finding that the defendant was guilty of the general crime of stalking under Iowa Code section 708.11(2). The key issue is whether these shards, in view of the way they were used, fit the definition of a dangerous weapon so as to constitute an aggravating factor under the stalking statute.

### II. *The Search Warrant Issue.*

■ Greene argues that the district court erred in denying his motion to suppress evidence seized from his home and his pickup. Contrary to Greene's argument, we find the search warrant was based on probable cause. In fact, the issuing magistrate detailed links between all items listed in the application and specific evidence presented. Moreover, evidence seized from Greene that was not covered by the warrant was admissible because it was seized from plain view, and its incriminating nature was apparent, based on the officer's knowledge of the underlying facts. *See Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112, 123 (1990).

### III. *The "Dangerous Weapon" Issue.*

■ Iowa Code section 708.11(3)(*b*)(2) provides:

> A person who commits stalking in violation of this section commits a class "D" felony if any of the following apply:
>
> . . . .
>
> (2) The person commits stalking while in possession of a dangerous weapon, as defined in section 702.7.

A dangerous weapon, in turn, is defined by Iowa Code section 702.7 as

> any instrument or device designed primarily for use in inflicting death or inju-

ry upon a human being or animal, and which is capable of inflicting death upon a human being when used in the manner for which it was designed. Additionally, any instrument or device of any sort whatsoever which is actually used in such a manner as to indicate that the defendant intends to inflict death or serious injury upon the other, and which, when so used, is capable of inflicting death upon a human being, is a dangerous weapon.

The State may meet this burden of proof on the dangerous-weapon issue by showing that steel shards either fit the first half of the definition, i.e., that they were "designed primarily for use in inflicting death or injury," or the second half of the definition, i.e., a "device of any sort whatsoever which is actually used in such a manner as to indicate that the defendant intends to inflict death or serious injury ... and ... is capable of inflicting death upon a human being...."

Under the second part of Iowa Code section 702.7, the test is whether the device is used in such a way as to show an intent to kill or injure a person. Under that test, we have held that a car may be a dangerous weapon. *State v. Oldfather*, 306 N.W.2d 760, 763–64 (Iowa 1981) (holding car, if operated "in such a manner as to indicate an intent to inflict death or serious injury, may be a 'dangerous weapon' ").

Dangerous weapons, in fact, can encompass almost any instrumentality under certain circumstances.

Where the issue is whether an assault or a murder has been committed with a deadly weapon, it may be held that a stick, stone, hoe, or any one of many other instruments is a deadly weapon, according to the manner in which it is used, the determination of the lethal nature of the instrumentality being a question of fact for the jury.

79 Am.Jur.2d *Weapons & Firearms* § 1, at 5 (2002).

In this case, the court defined "dangerous weapon" for the jury by quoting the language of section 702.7 and left it to the jury to determine if the shards met one of those definitions. The trial court expressed some reservation about submitting the dangerous-weapon issue to the jury, and we believe under the circumstances of this case it was error to do so. The general rule is that:

Whether an instrument used in an assault is a deadly weapon is a question of law, where there is no dispute about the facts. Where the alleged weapon is not defined by the statute as deadly, a case may exist where, from the ordinary harmless character of such instrument in the light of its claimed use, the court can say as a matter of law, under the circumstances shown, that it is not a deadly weapon.

On the other hand, the question whether there was an assault with a dangerous or deadly weapon is to be submitted to the jury where the instrument used is not one declared by statute to be a deadly weapon or where its character, whether dangerous or deadly, or not, is doubtful, or where its character depends on the manner in which it is used.

6A C.J.S. *Assault* § 156, at 379 (2004) (footnotes omitted).[1] When we compare the facts of this case to the wording of section 702.7, it appears the trial court's reluctance to instruct on the aggravated offense of stalking while possessing a dangerous weapon was well-founded. Under the first test for a dangerous weapon un-

---

1. We have previously held that the phrase "dangerous weapon," as defined in section 702.7, is substantially identical to the phrase "deadly weapon." *State v. Jespersen*, 360 N.W.2d 804, 807 n. 1 (Iowa 1985).

der section 702.7, the evidence could not reasonably support a finding that the shards were "designed primarily for use in inflicting death or injury...." They were designed to do just what they did—ruin a car tire. The State argues that, nevertheless, an intent to ruin a tire may infer an intent to kill or injure a person because the car might go out of control when the tires deflated. We believe this correlation is too speculative; under that reasoning, a lug wrench used to loosen car wheels could be considered a dangerous weapon because a wheel might fall off the car and cause it to crash. We conclude the shards fail the first test of section 702.7 (designed to inflict injury or death).

They also fail to satisfy the alternative definition under section 702.7 (a device actually used in a manner as to indicate that the defendant intends to inflict death or serious injury). If the shards were held in the defendant's hand in a personal confrontation with a victim, there would be little doubt that they were dangerous weapons, as they would have been used in a manner indicating an intent to kill or injure. That is not the case here, however. While the record would support a finding of intent to damage property, it could not, as a matter of law, support a finding that the shards were designed to, or actually used with an intent to, inflict death or injury. Attributing such intent to the defendant under these facts would necessarily be based on conjecture.

We conclude the court erred in submitting the issue of the defendant's possession of a dangerous weapon. The evidence, however, is sufficient to support a verdict of guilt as to the included offense of aggravated misdemeanor stalking under Iowa Code section 708.11(3)(*c*), as well as the convictions for criminal mischief under Iowa Code section 716.4. We vacate the decision of the court of appeals, affirm the convictions for criminal mischief, and remand for entry of a judgment of conviction on misdemeanor stalking and for resentencing on all convictions.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED.**