# IN THE SUPREME COURT OF IOWA

No. 09–0895

Filed October 15, 2010

**STATE OF IOWA,**

Appellee,

vs.

**RICARDO ORTIZ,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Plymouth County, Jeffrey A. Neary, Judge.

The State argues the court of appeals erred in vacating defendant's guilty plea to robbery in the first degree in violation of Iowa Code sections 711.1 and 711.2 because the record lacked a factual basis to support the conviction. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Patricia Reynolds, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary E. Tabor (until withdrawal) and then Thomas S. Tauber, Assistant Attorneys General, and Darin J. Raymond, County Attorney, for appellee.

**BAKER, Justice**.

The State seeks further review from the court of appeals' decision to vacate the sentence of the defendant, Ricardo Ortiz, following his guilty plea to robbery in the first degree in violation of Iowa Code sections 711.1 and 711.2 (2009). The State contends the court of appeals erred in holding defendant received ineffective assistance of counsel because defendant's trial counsel permitted defendant to plead guilty to robbery in the first degree without a sufficient factual basis in the record in violation of Iowa Rule of Criminal Procedure 2.8(2)(*b*). The State asserts the record contains a sufficient factual basis to support first-degree robbery. We agree. We find the record contains a factual basis that a dangerous weapon was used in the robbery. The decision of the court of appeals is vacated, and the district court judgment is affirmed.

## I. Background Facts and Proceedings.

Ricardo Ortiz pleaded guilty to robbery in the first degree in violation of Iowa Code sections 711.1 and 711.2. The minutes of evidence contained in the trial information allege Ortiz was one of three or four masked men who entered K.S.'s house through her garage with the intent to steal property. One of the intruders displayed a box cutter or utility knife in his left hand. This intruder was waving the instrument. K.S. was frightened and was yelling. At one point during the invasion, the intruder who possessed the box cutter confronted K.S. in the hallway, placing himself between her and the bedroom. K.S. and the intruder then struggled over the door; K.S. tried to close the door to keep the intruder out while the intruder tried to open the door. K.S.'s screaming and yelling eventually caused the intruders to leave and flee the scene.

Another resident, F.T., was in the master bedroom and did not see the intruders, but he did contact police. The deputies located and pursued the intruders' car. The intruders lost control of their car, and it became lodged in a snow bank. Three individuals fled, and two individuals, including Ortiz, were apprehended in the car. Ortiz's footprints matched foot treads found outside of K.S. and F.T.'s home. Ortiz admitted to the police they entered the house "to see what they could get." He admitted to wearing a black stocking cap and a red bandanna covering his face. Ortiz also carried a black trash bag to carry stolen goods.

Deputies found a fixed five-inch knife with a black rubber handle and a silver metal hatchet located near the snow bank where the intruders' car stopped. The record does not indicate that a box cutter or utility knife was ever found. David Zamora, one of the participants, told the deputies that Michael Carson, another participant, "threw something and he thought it was a knife out of the back window prior to going into the ditch."

Ortiz pleaded guilty to robbery in the first degree. As part of his plea, Ortiz waived his right to file a motion in arrest of judgment. He was sentenced to a term of twenty-five years with a seventy percent mandatory minimum.

During the plea colloquy, the court was confused as to what additional elements triggered first-degree robbery as opposed to second-degree robbery. The prosecutor advised the judge that first-degree robbery requires the additional element that the defendant "purposely inflict serious injury or attempt to inflict serious injury or is armed with a dangerous weapon." Ortiz and his trial counsel discussed the additional

first-degree robbery element off the record. Then, the following conversation occurred:

> THE COURT: All right. Uh, I think my last question, Mr. Sloan [defense counsel], was are you prepared to address which one of those options under 711.2 might apply to this particular case? MR. SLOAN: I-I believe it is armed with a dangerous weapon, Your Honor.
>
> THE COURT: All right. Uh, Mr. Ortiz, do you agree that either you or someone with whom you were, uh, participating in this robbery with was armed with a dangerous weapon? DEFENDANT: Yes.
>
> THE COURT: All right. Have, uh, you, uh, visited with Mr. Sloan about what's involved and what the definition of a dangerous weapon is? DEFENDANT: Yes.
>
> THE COURT: Ok Mr. Raymond [the prosecutor], are you satisfied with the factual basis? MR. RAYMOND: I am, Your Honor.

Earlier in the colloquy, Ortiz also admitted he "purposely put someone in fear of a serious injury." At the end of the colloquy, the court accepted Ortiz's plea. Subsequently, Ortiz filed a notice of appeal asserting ineffective assistance of counsel alleging that his trial counsel failed to file a motion in arrest of judgment. Specifically, he alleged there was no factual basis in the record that anyone participating in the robbery possessed a dangerous weapon within the meaning of Iowa Code section 702.7; therefore, there was no factual basis to support his first-degree robbery plea.

We transferred the case to the court of appeals. The court of appeals found the record contained no factual basis that anyone involved in the robbery used a dangerous weapon and vacated the district court's sentence. We granted further review.

## II. Scope of Review.

Normally we review challenges to guilty pleas for correction of errors at law. *State v. Tate,* 710 N.W.2d 237, 239 (Iowa 2009); Iowa R.

App. P. 4. Because Ortiz claims his guilty plea results from ineffective trial counsel, a claim with constitutional dimensions, our review is de novo. *State v. Keene*, 630 N.W.2d 579, 581 (Iowa 2001).

### III.  Preservation of Error.

To preserve error for appeal, generally, defendants challenging a guilty plea must file a motion in arrest of judgment prior to sentencing. *State v. Gant*, 597 N.W.2d 501, 503–04 (Iowa 1999). We recognize an exception to this general rule for ineffective assistance of counsel claims. *Keene*, 630 N.W.2d at 581. Nevertheless, the State contends Ortiz did not properly preserve error because Ortiz, as part of his plea agreement, waived his right to file a motion in arrest of judgment; therefore, Ortiz cannot allege on appeal his counsel was ineffective for not filing a motion in arrest of judgment. If we accept the State's argument, then Ortiz's plea agreement would waive his right to challenge the factual basis of his plea; such a result empowers the State to deprive defendants of their right to effective counsel as a condition of the plea bargaining process, an untenable result. *See State v. Philo*, 697 N.W.2d 481, 484–85 (Iowa 2005) (noting that counsel's failure to file a motion in arrest of judgment when defendant's plea lacks a factual basis constitutes ineffective counsel). We adhere to precedent. Ineffective counsel claims are an exception to our error preservation requirements. *Id.* at 485.

### IV.  Discussion and Analysis.

To prove ineffective assistance, the defendant must demonstrate by a preponderance of evidence that "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d. 674, 693 (1984)). Defense counsel violates an essential duty when counsel

permits defendant to plead guilty and waive his right to file a motion in arrest of judgment when there is no factual basis to support defendant's guilty plea. *Philo,* 697 N.W.2d at 485; Iowa R. Crim. P. 2.8(2)(*b*). Prejudice is presumed under these circumstances. *State v. Schminkey,* 597 N.W.2d 785, 788 (Iowa 1999).

Therefore, to succeed on the essential duty prong, Ortiz must demonstrate the record lacks a factual basis to support his guilty plea to first-degree robbery. First-degree robbery requires the accused to commit robbery "armed with a dangerous weapon." Iowa Code § 711.2. The precise issue then is whether the record demonstrates a factual basis that a dangerous weapon was used in the robbery.[1]

Iowa Code section 702.7 defines the term dangerous weapon in three different manners. We must examine whether the record demonstrates a factual basis that a dangerous weapon was used in the robbery within the framework of each statutory definition of dangerous weapon.

**A. Dangerous Weapon Defined Generally.**

Initially, section 702.7 defines "dangerous weapon" generally:

> A "*dangerous weapon*" is any instrument or device designed primarily for use in inflicting death or injury upon a human being or animal, and which is capable of inflicting death upon a human being when used in the manner for which it was designed, except a bow and arrow when possessed and used for hunting or any other lawful purpose.

The record contains facts demonstrating that a small utility knife or box cutter was present during the robbery. These instruments do not have the primary purpose of inflicting death or injury, nor were they

---

[1]Under aider and abettor liability, Ortiz personally did not have to use a dangerous weapon in the robbery to be convicted of first-degree robbery as long as one of the coparticipants possessed a dangerous weapon. Iowa Code § 703.1.

designed for that purpose. There is no factual basis in the record to support that a dangerous weapon under this definition was used in the robbery.

### B. Dangerous Weapon Per Se.

Section 702.7 also defines "dangerous weapon" in terms of per se dangerous weapons:

> Dangerous weapons include but are not limited to any offensive weapon, pistol, revolver, or other firearm, dagger, razor, stiletto, switchblade knife, knife having a blade exceeding five inches in length, or any portable device or weapon directing an electric current, impulse, wave, or beam that produces a high-voltage pulse designed to immobilize a person.

The State argues that because K.S. described the weapon as "a box cutter knife that contained a razor blade" and because section 702.7 includes the term "razor" in its definition of dangerous weapons per se, we should hold that a box cutter is a dangerous weapon per se. In *Durham* we held that

> [i]t is apparent from the context that the term "razor" as used in the former statute [Iowa Code section 695.1 (1977)] and in section 702.7 is limited to the straight razor, a common shaving instrument before invention of the safety razor.

*State v. Durham*, 323 N.W.2d 243, 245 (Iowa 1982).

The State argues our finding in *Durham,* that the term "razor" is limited to a straight razor, is dicta and urges us to reexamine this issue. We decline to do so and reaffirm *Durham.* The term "razor" as used in section 702.7 is limited to the straight razor.

Even were we to reexamine *Durham,* our result remains the same. We recognize that some other courts have found the term "razor" to encompass box cutter instruments that contain a razor blade on the basis of legislative intent. *See, e.g., In re Z.R.,* 86 Cal. Rptr. 3d 495,

497–98 (Ct. App. 2008) (holding that a box cutter is a "razor with an unguarded blade" within the context of a statute prohibiting weapons at school for the purposes of reducing violence at schools). However, identifying a clear and particular legislative purpose or meaning behind section 702.7 is challenging given its general purpose and application. Section 702.7 is grouped in the criminal law definitional section of the Code and is a definitional provision that is incorporated into numerous other criminal law provisions. *See, e.g.,* Iowa Code ch. 708 ("dangerous weapon" is used ten times in assault-related provisions); Iowa Code § 709.3 ("dangerous weapon" is an element of second-degree sexual abuse); Iowa Code § 719.1 ("dangerous weapon" may be an element of interference with official acts). It is far from self-evident from the text of section 702.7 and its incorporation into numerous other criminal law provisions whether the legislature intended a box cutter to be a razor in the context of the per se dangerous weapon definition. Answering that question affirmatively would require speculation.

Moreover, "[i]f a criminal statute is ambiguous we resolve any doubt in favor of the accused." *State v. Finders*, 743 N.W.2d 546, 548 (Iowa 2008). The Virginia Supreme Court invoked this same rule of lenity when it held a box cutter was not a razor within the meaning of its weapons possession statute. *Harris v. Commonwealth*, 650 S.E.2d 89, 91 (Va. 2007). In *Harris*, the defendant, a convicted felon, was convicted of possession of a concealed weapon, a box cutter, in violation of Virginia Code Annotated section 18.2–308.2(A). *Id.* at 90. The statute prohibited convicted felons from carrying numerous weapons including a "razor." The court looked to the dictionary definition of both a razor and a box cutter and found definitional differences:

The current dictionary definition of the term "razor" refers to both a straight razor and a safety razor. A box cutter is neither; it is defined as "a small cutting tool that is designed for opening cardboard boxes and typically consists of a retractable razor blade in a thin metal sheath." Merriam-Webster's Collegiate Dictionary 148 (11th ed. 2004). Furthermore, when a razor was added to the list of items that could not lawfully be carried concealed, *see* 1884 Acts ch. 143, the term "razor" was defined as "a knife with a keen edge and broad back, used for shaving." A Dictionary of the English Language 828 (1885); *see also* A Dictionary of the English Language 1187 (1880) (defining the term "razor" as "[a] knife or instrument for shaving off beard or hair").

*Id.* at 91 (footnote omitted). The court then noted it was required to construe ambiguous penal statutes narrowly and the definitional differences between a razor and a box cutter required the court to conclude that a box cutter was not a razor within the meaning of the statute. *Id.*

We find this reasoning persuasive. Simply put, a box cutter is not a razor. While the two instruments may be capable of posing similar threats if misused, the instruments are different in design and utility. It would be speculative for us to conclude that the legislature intended a box cutter to constitute a per se dangerous weapon when it classified a razor as such. A criminal statute's ambiguity requires this court to construe the ambiguity narrowly. We continue to hold a box cutter is not a razor within the meaning of section 702.7 and reaffirm *Durham.*

## C. Dangerous Weapon in Manner Used.

Finally, section 702.7 defines "dangerous weapon" in terms of actual use:

Additionally, any instrument or device of any sort whatsoever which is actually used in such a manner as to indicate that the defendant intends to inflict death or serious injury upon the other, and which, when so used, is capable of inflicting death upon a human being, is a dangerous weapon.

The first question under this definition is whether a box cutter "when so used, is capable of inflicting death upon a human being." Iowa Code § 702.7. We have stated that "[d]angerous weapons, in fact, can encompass almost any instrumentality under certain circumstances." *State v. Greene*, 709 N.W.2d 535, 537 (Iowa 2006). Practical experience tells us that a box cutter or utility knife when so intended is capable of inflicting death. Other courts have also found that a box cutter is not a per se dangerous weapon but may be used in a dangerous manner. *Harris*, 650 S.E.2d at 92 ("We are keenly aware that a box cutter is a potentially dangerous instrumentality . . . ."); *State v. Doisey*, 590 S.E.2d 886, 893 (N.C. Ct. App. 2004) (holding that a box cutter is a dangerous weapon only in appropriate circumstances). As a box cutter may be used in a manner that causes serious bodily harm, we turn to the other definitional requirement.

The last requirement under this definition of dangerous weapon is whether the defendant "actually used [the instrument] in such a manner as to indicate that the defendant intends to inflict death or serious injury upon the other." Iowa Code § 702.7. The word "indicate" makes clear that this inquiry is objective, and "the other" as used in the provision is most plausibly read to mean the victim. Therefore, an accused satisfies this definitional requirement when the accused objectively manifests to the victim his or her intent to inflict serious harm upon the victim. This construction is consistent with our past precedent. *Greene*, 709 N.W.2d at 537 (stating the test "is whether the device is used in such a way as to show an intent to kill or injure a person").

Our past cases suggest that a defendant objectively indicates intent to inflict harm when the defendant engages in a personal confrontation with another while possessing an instrument capable of

causing bodily harm. *Greene* held that steel shards placed under a victim's car tires were not used as a dangerous weapon. *Id.* at 538. However, the court posited

> [i]f the shards were held in the defendant's hand in a personal confrontation with a victim, there would be little doubt that they were dangerous weapons, as they would have been used in a manner indicating an intent to kill or injure.

*Id.* Similarly, we have held that a three foot metal pipe was actually used as a dangerous weapon when the defendant stood over his victim "poised to strike." *State v. Lambert*, 612 N.W.2d 810, 815 (Iowa 2000); *see also State v. Hill*, 258 Iowa 932, 936, 140 N.W.2d 731, 733 (1966) ("It has been said, and we agree, that the character of a dangerous weapon attaches by adoption when the instrument is applied or is carried for use against another in furtherance of an assault."). Thus we determine that a box cutter may be "used in such a manner as to indicate that the defendant intends to inflict death or serious injury."

Before turning to the record, we must determine the evidentiary threshold required for district courts to accept a guilty plea. Iowa Rule of Criminal Procedure 2.8(2)(*b*) requires the court to ensure the defendant's plea has a factual basis before accepting the defendant's plea. The factual basis must be contained in the record, and the record, as a whole, must disclose facts to satisfy all elements of the offense. *Keene*, 630 N.W.2d at 581. A factual basis can be discerned from four sources: (1) inquiry of the defendant, (2) inquiry of the prosecutor, (3) examination of the presentence report, and (4) minutes of evidence. *State v. Williams*, 224 N.W.2d 17, 18–19 (Iowa 1974). Moreover, we have held the record does not need to show the totality of evidence necessary to support a guilty conviction, but it need only demonstrate facts that support the offense. *Keene*, 630 N.W.2d at 581. Federal courts have construed

Federal Rule of Criminal Procedure 11(b)(3), the counterpart to our rule 2.8(2)(*b*), similarly. *See, e.g.*, *United States v. Serrano-Beauvaix*, 400 F.3d 50, 53 (1st Cir. 2005); *United States v. Rea*, 300 F.3d 952, 958 (8th Cir. 2002). Thus, we need only "be satisfied that the facts support the crime." *Keene*, 630 N.W.2d at 581.

We now turn to the record to determine if the record demonstrates a factual basis that Ortiz possessed a dangerous weapon and indicated intent, through use of the box cutter, to cause severe bodily harm to the victim, K.S. The minutes of evidence state that K.S. saw a "box cutter type knife that contained a razor blade" in the left hand of the lead intruder into her home. The intruder was "waving" the box cutter and caused K.S. to be frightened and yell. Also, the minutes of evidence detail a personal altercation between the intruder possessing the box cutter and K.S. in the hallway as well a struggle between the two with the bedroom door.

Ortiz made statements at his plea colloquy that tend to show that a dangerous weapon was used in the robbery. Ortiz admitted during his colloquy that he "purposely put someone in fear of a serious injury." We think this admission tends to establish that an intruder used an instrument "in such a manner to indicate that the defendant intends to inflict death or serious injury." Iowa Code § 702.7. The dangerous weapon determination turns in part on the intruders' indication of intent; here, Ortiz admits he acted with the intent to purposely put K.S. in fear of serious injury. We believe that Ortiz's admission that he intentionally put the victim in fear of serious injury is probative that someone in the robbery indicated intent to inflict serious injury with a weapon, especially when this admission is placed in context with the minutes of evidence describing an intruder confronting K.S. with a box cutter.

The record, when viewed as a whole, demonstrates facts similar to the personal confrontation contemplated in *Greene* and present in *Lambert*. *Greene*, 709 N.W.2d at 537–38; *Lambert*, 612 N.W.2d at 815. The record shows K.S. identified a box cutter or utility knife in the left hand of the lead intruder, the intruder was waving the instrument while in the house, K.S. was scared, K.S. was confronted by this man in the hallway, K.S. struggled with this man opening and closing a bedroom door, and Ortiz admitted he "purposely put someone in fear of a serious injury." We find the record demonstrates a factual basis that an "instrument [was] . . . actually used in such a manner as to indicate that the defendant intends to inflict death or serious injury upon the other." Iowa Code § 702.7.

### V. Disposition.

Because the record contained a factual basis to support a finding that a dangerous weapon was used in the robbery, Ortiz's counsel did not breach an essential duty when he permitted Ortiz to plead guilty to first-degree robbery or when he declined to file a motion in arrest of judgment. *See State v. Taylor*, 689 N.W.2d 116, 134 (Iowa 2004) (defense counsel does not have a duty to assert challenges that lack merit). The decision of the court of appeals is vacated and the district court judgment reinstated.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**