# IN THE COURT OF APPEALS OF IOWA

No. 18-1973
Filed January 23, 2020

**LUIS RAMON AYABARRENO,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Hancock County, Gregg R. Rosenbladt, Judge.

An applicant appeals the denial of postconviction relief. **AFFIRMED.**

David A. Kuehner (until withdrawal) of Eggert, Erb, Kuehner & DeBower, P.L.C., Charles City, and Jason Dunn of Dunn Law, PLC, Des Moines for appellant.

Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee State.

Considered by Vaitheswaran, P.J., May, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**BLANE, Senior Judge.**

Applicant Luis Ramon Ayabarreno appeals the denial of his postconviction-relief (PCR) application regarding his 2013 conviction for first-degree robbery. *See* Iowa Code §§ 711.1(1), 711.2 (2011). This appeal is the third time Ayabarreno has visited our court following his conviction. Ayabarreno filed a direct appeal. We affirmed. *See State v. Ayabarreno*, No. 13-0582, 2014 WL 465761, at *1 (Iowa Ct. App. Feb. 5, 2014). He then filed a pro se PCR application that proceeded to trial. The district court denied the one issue that was presented at the trial. Ayabarreno appealed that decision. Our court affirmed on the issue the district court ruled on but remanded for trial on the various issues that the PCR court had failed to address. *See Ayabarreno v. State*, No. 15-1203, 2016 WL 4036168, at *1 (Iowa Ct. App. July 27, 2016).

On remand, the district court held a second trial as we directed. Following the trial, the PCR court filed an extensive ruling covering all issues Ayabarreno's application raised and denied them. Ayabarreno appeals the denial of two specific issues: criminal trial counsel's alleged ineffective assistance in failing to object to the jury instructions that defined "dangerous weapon" and allowing an aiding and abetting instruction to be given.

## I. Factual background.

On November 25, 2011, store clerk Mendi Cuellar was at work at the Town Mart in Klemme, Iowa. As she was closing, she took the cash and checks out of the till and placed them in bank bags for deposit the next day. Just then, a masked man entered the store, came around the counter toward her with a "large" knife, and demanded: "Where's the money? Give me the money. Is that all the money?"

Cuellar gave him three money bags. The man left, and Cuellar locked the door and called 911 reporting the robbery. She said the robber wore a hooded sweatshirt with "Carolina" written on it and that "[h]e had a big knife."[1]

While investigating the robbery, a Hancock County Sheriff's Deputy reviewed the store's surveillance video from that night and previous days and was able to identify a man entering the store, on an earlier occasion, wearing the Carolina sweatshirt described by Cuellar. The deputy was able to link the man wearing that sweatshirt to a red Chrysler Concorde with Minnesota plates. The Concorde was registered to Luis Ayabarreno. The deputy remembered seeing the vehicle parked in front of a home in Klemme. Further investigation uncovered that Maria Garcia, the sister of Ayabarreno's girlfriend, lived at the house. Ayabarreno and his girlfriend were in town visiting Garcia at the time of the robbery.

Based on this information, the police obtained a search warrant for the Garcia house and executed it on January 19, 2012. Iowa Division of Criminal Investigation Agent Chris Callaway went to Minnesota and questioned Ayabarreno. Ayabarreno admitted robbing the Town Mart and described for the agent the exact location where the money bags were hidden in a chimney at the Garcia house in Klemme. Callaway relayed that information to the officers back in Iowa, and they returned to the house and found the money bags exactly where Ayabarreno said they were hidden. The police also found the "Carolina" sweatshirt.

---

[1] The recording of the 911 call was admitted into evidence and played for the jury.

On January 31, the State charged Ayabarreno with robbery in the first degree, in violation of Iowa Code sections 711.1 and 711.2 (2011). A jury trial commenced on February 27, 2013. At trial, Cuellar testified that the robber "came in and pulled a knife on me and robbed me" and "he had a knife and that's when he was swinging it." In response to a question about how big the knife was, she testified: "It was a long knife, I don't know how—as far as size." A surveillance video from the Town Mart that captured the robbery was also admitted into evidence and shown to the jury. This video showed the knife and how it was used during the robbery. During the trial, the State did not present evidence of any other person being involved in the robbery and argued that Ayabarreno was the sole robber, not mentioning aiding and abetting. The defense argued that Ayabarreno was not the robber. The jury found Ayabarreno guilty as charged on February 28. The court sentenced Ayabarreno to an indeterminate twenty-five-year term in prison.

## II. Standard of review.

"We generally review the denial of an application for [PCR] for correction of errors at law." *Sauser v. State*, 928 N.W.2d 816, 818 (Iowa 2019). "However, our review is de novo when the basis for [PCR] implicates a constitutional violation." *Linn v. State*, 929 N.W.2d 717, 729 (Iowa 2019). "PCR applications alleging ineffective assistance of counsel raise a constitutional claim." *Id.*

**III. Discussion.**

**A. Whether trial counsel was ineffective for failing to object to the jury instruction defining dangerous weapon.**

To establish ineffective assistance of counsel the applicant must show "by a preponderance of the evidence that (1) trial counsel failed to perform an essential duty and (2) this failure resulted in prejudice." *Id.* at 730. We determine whether counsel's performance met the standard of a reasonably competent attorney, with a presumption of competence. *Id.* at 731. To show prejudice, the applicant must establish that counsel's errors were serious enough to deprive the defendant of a fair trial. *Id.* There must be a reasonable probability the proceeding would have turned out differently. *Id.*

A defendant is not entitled to "perfect representation," just an attorney functioning within a normal range of competence. *State v. Artzer*, 609 N.W.2d 526, 531 (Iowa 2000); *see also State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). On the performance prong, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 698 (1984); *see also Maxwell*, 743 N.W.2d at 721; *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). With respect to prejudice, an applicant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Maxwell*, 743 N.W.2d at 722; *Ledezma*, 626 N.W.2d at 143; *Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994). "A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Strickland*, 466 U.S. at 694; *accord Ledezma*, 626 N.W.2d at 144-45.

A person commits robbery in the first degree when, while perpetrating a robbery, the person purposely inflicts or attempts to inflict serious injury, or is armed with a dangerous weapon. Iowa Code § 711.2. In this case, the State's theory and evidence was that Ayabarreno was armed with a dangerous weapon. The jury was given the following instruction defining a dangerous weapon:

> A "dangerous weapon" is any device or instrument designed primarily for use in inflicting death or injury and when used in its designed manner is capable of inflicting death. It is also any sort of device used in such a way as to indicate the user intended to inflict death or serious injury, and when so used in capable of inflicting death.

Ayabarreno argues that when a jury is instructed on alternatives there must be some evidence to support each of the theories offered. He continues, since this instruction contains two alternatives, his counsel had a duty to object because there was insufficient evidence to support both alternatives and the jury returned only a general verdict. At the PCR trial, Ayabarreno's trial counsel testified that he did not recall having any concern regarding this instruction. Ayabarreno argues, "Th[e] evidence does not support either of the grounds in the instruction given to the jury."

Our supreme court has stated:

> [I]n Iowa we have consistently held if a general verdict is returned in which one theory should not have been submitted and we cannot determine which theory the jury embraced, the verdict is flawed. We think this approach applies in the context of a jury instruction that provides for three alternative methods of establishing an offense.

*State v. Tipton*, 897 N.W.2d 653, 681 (Iowa 2017) (citations omitted), *rehearing denied* (July 13, 2017) . However, this legal concept does not apply here. The instruction here is not a marshalling instruction that contains two or more alternative ways that the crime could be committed. Rather, the particular instruction contains two definitions of what may constitute a dangerous weapon.

We first note that the instruction given is Iowa Criminal Jury Instruction No. 200.21. The uniform instruction mirrors Iowa Code section 702.7:

> A "dangerous weapon" is any instrument or device designed primarily for use in inflicting death or injury upon a human being or animal, and which is capable of inflicting death upon a human being when used in the manner for which it was designed, except a bow and arrow when possessed and used for hunting or any other lawful purpose. Additionally, any instrument or device of any sort whatsoever which is actually used in such a manner as to indicate that the defendant intends to inflict death or serious injury upon the other, and which, when so used, is capable of inflicting death upon a human being, is a dangerous weapon.

The instruction is a correct statement of the law.

A dangerous weapon can "encompass almost any instrumentality under certain circumstances" depending on its actual use. *State v. Greene*, 709 N.W.2d 535, 537 (Iowa 2006); *see also State v. Ortiz,* 789 N.W.2d 761, 767 (Iowa 2010); *State v. Durham*, 323 N.W.2d 243, 245 (Iowa 1982).

Our supreme court has explained there are three approaches in determining whether an instrument or device meets the statutory definition in Iowa Code section 702.7—an instrument "designed primarily for use in inflicting death or serious injury," an item actually used in a manner indicating an intent to inflict death or serious injury and is capable of doing so, or a device listed as a dangerous

weapon per se. *State v. Howse,* 875 N.W.2d 684, 689-90 (Iowa 2016).[2] It is only necessary to establish the device or instrument at issue falls into one category. The supreme court further analyzed this question in *Ortiz*, where a box cutter was used during a robbery. 789 N.W.2d at 767. The court found that the box cutter did not meet the first alternative as "an instrument or device designed primarily for use in inflicting death or injury," but based on the evidence of how the box cutter was actually used, met the second definition: "any instrument or device of any sort whatsoever which is actually used in such a manner as to indicate that the defendant intends to inflict death or serious injury." *Id.* at 765, 767.

As to Ayabarreno's contention that the evidence did not support either definition of a dangerous weapon and his trial counsel should have objected, we do not agree. Based upon our review of the record, the evidence supported either definition in the instruction for the jury to find the knife used during the robbery was a dangerous weapon. The robbery victim, Cuellar, testified that the man came around behind the counter toward her waving a long knife. The surveillance video shows this and that he was waving the knife as he approached her. Cuellar described the knife to the 911 dispatcher as "big." At trial, she testified it was "long," although she could not state an exact size in inches.

---

[2] Iowa Code section 702.7 defines certain items as dangerous weapons per se:
> Dangerous weapons include but are not limited to any offensive weapon, pistol, revolver, or other firearm, dagger, razor, stiletto, switchblade knife, knife having a blade exceeding five inches in length, or any portable device or weapon directing an electric current, impulse, wave, or beam that produces a high-voltage pulse designed to immobilize a person.

There is no argument here that the knife in question met the "per se" definition.

The jury was well within its prerogative to find the knife met either definition of dangerous weapon. Ayabarreno's counsel had no basis to object to the instruction and was not ineffective for failing to do so.

**B. Whether trial counsel's failure to object to an aiding and abetting jury instruction was ineffective assistance?**

In the criminal trial, the judge included the standard "aiding and abetting" jury instruction. As noted by the PCR court, it is unclear why the instruction was given. Ayabarreno appears to latch onto this comment. He argues that his criminal trial counsel was ineffective for failing to object to this instruction.

In *State v. Simms*, No. 15-0274, 2016 WL 4543496, at *4 (Iowa Ct. App. Aug. 31, 2016), we noted that on direct appeal, an incorrect instruction is presumed to be prejudicial. *State v. Mayes*, 204 N.W.2d 862, 865 (Iowa 1973). But to succeed on an ineffective-assistance-of-counsel claim, it is necessary to establish prejudice. *State v. Thorndike,* 860 N.W.2d 316, 321 (Iowa 2015). The prejudice prong of an ineffective-assistance-of-counsel claim that stems from an instruction on an alternative method of committing a crime that is unsupported by the evidence is not satisfied if the record is devoid of any evidence that suggests the unsupported alternative is applicable. *Id.* at 322; *Maxwell,* 743 N.W.2d at 197. In *Maxwell,* the jury was erroneously instructed on aiding and abetting when there was no evidence of aiding and abetting in the record. 743 N.W.2d at 197. In *Thorndike,* the prosecutor's closing argument stated the erroneously inserted theory of the crime probably did not apply. 860 N.W.2d at 322. In both cases, prejudice was not established. *See id.* at 323; *Maxwell,* 743 N.W.2d at 197.

Upon our review of the record, we observe that the record is devoid of evidence that would support an aiding and abetting instruction. The trial information did not allege an aiding and abetting theory. Neither attorney for the State nor the defense discussed aiding and abetting in their opening statements. The first mention of "aid and abet" was in the defense's motion for judgment of acquittal at the close of the State's case-in-chief. The only evidence we discern during the State's case was in direct examination of the DCI agent who interviewed Ayabarreno, when he asked Ayabarreno if he had been required to split the robbery proceeds with anyone else and Ayabarreno answered he had not. There appears to have been off-the-record discussion between the court and counsel regarding the jury instructions. The only record regarding instructions is when objections were made, and none was lodged to the instructions by either counsel. The court then went through the numbering, and instruction number 18 was identified as the "aiding and abetting instruction." The remainder of the instructions did not identify an aiding and abetting theory, and neither counsel in closing arguments discussed aiding and abetting as a theory. We are equally puzzled why an aiding and abetting instruction was given to the jury.[3]

But, based on this record and following the *Maxwell* and *Thorndike* precedents, we find that Ayabarreno has not established that he suffered any prejudice from his trial counsel's failure to object to the aiding and abetting instruction.

---

[3] We continue to encourage trial courts to make a full record with counsel when discussing jury instructions.

**IV.    Conclusion.**

Having conducted a review of the record de novo, we find Ayabarreno's trial counsel was not ineffective in the manner claimed by Ayabarreno in this PCR and affirm the district court ruling denying his application.

**AFFIRMED.**