# IN THE COURT OF APPEALS OF IOWA

No. 21-1425
Filed January 24, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**GERRY HARLAND GREENLAND,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Decatur County, John D. Lloyd, Judge.

Gerry Greenland appeals his convictions for assault on a peace officer and attempt to commit murder of a peace officer. **AFFIRMED.**

Richard Hollis, Des Moines, and Kelsey L. Knight (until withdrawal) of Carr Law Firm, P.L.C., Des Moines, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Heard by Bower, C.J., and Schumacher and Chiccelly, JJ.

**BOWER, Chief Judge.**

Gerry Greenland appeals his convictions for assault on a peace officer and attempt to commit murder of a peace officer, claiming insufficient evidence to support the convictions and the two charges should merge. We find sufficient evidence supports Greenland's convictions and, as distinct actions underlie the offenses, the convictions do not merge. We affirm.

**I. Background Facts & Proceedings.**

On the afternoon of May 23, 2019, Trevor Greenland and Brandon Quayle were working on a pickup in the shop at Norma Greenland's home.[1] Trevor and Quayle used a tractor to pull the truck out of the shop to the gravel road to pull-start it. Greenland—Trevor's uncle and Norma's son—came out of the house and asked Trevor and Quayle what they were doing. Trevor and Greenland exchanged words, then Greenland opened the pickup door and punched Trevor in the face. Trevor got out of the truck and walked around back; Greenland tried to strike him again, and Trevor struck back. Trevor and Quayle grabbed Greenland and restrained him until he calmed. After releasing him, Trevor and Greenland exchanged more words, then Greenland walked back to the house.

Quayle called Monte Greenland—Trevor's father and Greenland's brother—and told him what had occurred. Trevor talked with Norma about what happened and called the sheriff's department to report Greenland's assault and ask them to come to the farm.

---

[1] This case involves multiple people from the Greenland family. We will refer to the defendant, Gerry, as Greenland, and use first names for the other family members.

Greenland left the house, walked to the tractor—which was still on the road—unhooked the pickup truck, and drove the tractor back to the shop.

When Monte arrived, he and Greenland argued. Greenland was standing by the shop entrance armed with a crowbar, and Monte went back to his pickup, grabbing a pipe. Monte approached, and Greenland retreated into the shop. Greenland drove the tractor out of the shed, now with bale spears attached to the front in a low position.[2] Greenland drove at Monte, then up the driveway and directly into the driver's side of Monte's truck. The bale spears passed below the body of the truck but damaged the frame.

Greenland then backed up, turned, and started down the driveway. Trevor called the sheriff's department again and relayed what had just occurred. Trevor, Quayle, and Monte retreated to their respective vehicles and tried to evade Greenland in the tractor. Greenland drove up and down the gravel road chasing Trevor, Quayle, and Monte.[3] Trevor and Quayle separately called for law enforcement. Trevor, Monte, and Quayle regrouped south of the farm. Greenland gave up the chase, turned around, and drove back to the farm.

Law enforcement vehicles came upon Trevor, Monte, and Quayle. Monte spoke with Sergeant Arnold about Greenland's behavior, and Sergeant Arnold

---

[2] The bale spears are devices created by Monte and connected to the front of the tractor to lift two hay bales at a time. The tractor has two pointed spears, about six feet long and set two feet apart, which start parallel to the ground and angle up as they are lifted. When fully lifted, "[t]hose points on those spears are eye level . . . five and a half feet" high. The hydraulic lift mechanism stays on the tractor, with the spears attached and removed as necessary.

[3] The tractor's top speed was around fourteen miles per hour, and the men were able to get away when they had a clear path.

proceeded to the farm with his emergency lights flashing but no sirens. Sergeant Arnold's vehicle had "Sheriff" emblazoned on the side.

Greenland was driving a utility vehicle when Sergeant Arnold came in sight of the farm. Greenland went back to the tractor, got on and started it, and raised the bale spears to a height of about three to three-and-a-half feet. Sergeant Arnold entered the driveway when Greenland reversed and turned the tractor to head directly at the sheriff's vehicle. Sergeant Arnold put his squad car in reverse and moved out of Greenland's path. Greenland then turned and headed down the driveway where two more law enforcement vehicles were approaching.

The lead vehicle was driven by Sheriff Boswell. Although the vehicle was unmarked, it had a blue-and-red light bar running at the visor level of the windshield, blue and red flashing lights on either side of the license plate, strobe lights flashing at the top of the bumper, and a clearly visible sheriff star on the license plate. Sergeant Arnold, who had a similar vantage as Greenland, said the unmarked car had "very visible LED lights."

Sheriff Boswell drove into the entry area of the driveway, pulling to the right side when he saw Greenland approaching. Instead of going past the vehicle and down the driveway, Greenland turned the tractor directly into Sheriff Boswell's vehicle. One tine of the bale spears went in at an angle through the front of the driver's door aimed at the driver seat, and the other stopped by the door handle. The door buckled in on Sheriff Boswell, but the tine did not push through. Greenland's tractor pushed the vehicle down the driveway and turned right around the corner before going into the ditch. Sheriff Boswell believed Greenland only stopped because the ground was wet and, with the added weight of his vehicle,

the tractor could not get enough traction to keep going. Deputy Arnold testified after the impact, "The tractor spun down a little, almost killed it. [Greenland] dropped a gear and pushed the vehicle on out of the driveway and into that ditch." Sheriff Boswell testified during the initial strike and while getting pushed into the ditch, he feared for his life.

The last vehicle, driven by Deputy Savely, was immediately behind Sheriff Boswell. Deputy Savely's vehicle was clearly marked "sheriff" on the side, and its emergency light bar was running. Deputy Savely started to turn into the driveway, but he saw Sheriff Boswell's vehicle backing toward him. He put his vehicle in reverse and backed away to the far side of the road. He saw Sheriff Boswell's vehicle was being pushed by the tractor. Deputy Savely jumped out of his car, drew his firearm, and ordered Greenland to stop and get out of the tractor. Greenland "was very agitated, very animated. He was definitely upset at someone and cursing." Greenland complied with Savely's orders to get out of the tractor.

After the tractor came to a stop, Sheriff Boswell was able to exit his vehicle through the passenger side door. He was not physically injured.

Following a bench trial, the court found Greenland guilty of attempt to commit murder of a peace officer acting in the performance of his duties, in violation of Iowa Code section 707.11 (2019); assault on a peace officer with intent to cause serious injury while using a dangerous weapon, in violation of sections 708.1 and 708.3A; and simple assault, in violation of sections 708.1 and 708.2.

Greenland appeals his convictions for attempt to commit murder of a peace officer and assault with the intent to inflict serious injury or while using a dangerous

weapon on a peace officer claiming the evidence is insufficient to support the two convictions and the court erred in failing to merge the two because assault with intent to inflict serious injury is a lesser-included offense of attempt to commit murder.

## II. Standard of Review.

We review challenges to the sufficiency of the evidence for correction of errors at law. *State v. Lacey*, 968 N.W.2d 792, 800 (Iowa 2021). We will affirm if the factfinder's decision is supported by substantial evidence. *Id.* We "consider[ ] the evidence in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *Id.*

"A district court's failure to merge convictions as required by statute results in an illegal sentence." *State v. Love*, 858 N.W.2d 721, 723 (Iowa 2015). "Review of an illegal sentence for lack of merger is for correction of errors at law." *Id.*

## III. Analysis.

On appeal, Greenland challenges the sufficiency of the evidence supporting his convictions and claims his sentence is illegal because the assault and attempted murder convictions should have merged.

*Sufficiency of the evidence.* Greenland challenges the sufficiency of the evidence he (1) was aware his actions were directed at a peace officer, and (2) intended to assault or attempt murder on the peace officer.[4]

---

[4] Sheriff Boswell's status as a peace officer, if known by Greenland, increases the mandatory minimum on the offense of attempt to commit murder and enhances the offense level of assault with intent to commit serious injury or with a dangerous weapon. *See* Iowa Code §§ 707.11(5), 708.2, 708.3A.

Greenland first asserts the State did not establish he was aware the occupant of the vehicle was a law enforcement official at the time of his actions. Greenland states, "Given the lack of markings on the [sheriff's] vehicle, the ambiguity of whether the vehicle's sirens were activated, and whether [Greenland] had seen that the sheriff was uniformed, the conclusion that [Greenland] knew the vehicle's occupant was a peace officer is not supported by substantial evidence."[5]

The statute defining each offense requires that the offense be committed "with the knowledge that the person against whom the assault is committed [was or] is a peace officer."  *See* Iowa Code §§ 707.11(5)(b), 708.3A(1).  Neither statute imposes specific indices a peace officer must display.  *Compare id.*, *with* Iowa Code § 321.279(1) ("The driver of a motor vehicle commits a serious misdemeanor if the driver willfully fails to bring the motor vehicle to a stop or otherwise eludes or attempts to elude a marked official law enforcement vehicle driven by a uniformed peace officer after being given a visual and audible signal to stop.  *The signal given by the peace officer shall be by flashing red light, or by flashing red and blue lights, and siren.*" (emphasis added)).

"Knowledge or intent is seldom capable of direct proof, but usually is established from the surrounding circumstances."  *State v. Miller*, 308 N.W.2d 4, 7 (Iowa 1981); *see State v. Henderson*, 908 N.W.2d 868, 878 (Iowa 2018) ("[K]nowledge can be proved by circumstantial evidence.").  As the trial court found:

> At the time of the impact on Sheriff Boswell's vehicle, its red and blue emergency lights were operating.  That vehicle entered the

---

[5] Greenland's argument cites the statutory requirements of eluding a peace officer. *See* Iowa Code § 321.279.

premises on 120th shortly after the fully marked vehicle driven by Deputy Arnold entered the premises. The defendant was fully aware of the events that had transpired earlier including a fist fight with his nephew, deliberate ramming of his brother's vehicle, and attempts to chase Trevor Greenland, Brandon Quayle and Monte Greenland with the tractor, causing them to leave the premises. He knew why law enforcement vehicles were coming to the premises. He knew that those vehicles were operated by peace officers acting in the performance of their duties.

The circumstances of this case are sufficient to infer Greenland knew Sheriff Boswell was a peace officer when he committed the offenses. Sergeant Arnold had arrived at the farm just before Sheriff Boswell. Upon seeing Sergeant Arnold's marked law enforcement vehicle with its lights flashing, Greenland started the tractor, raised the bale tines, turned, and drove straight at Sergeant Arnold. As Sergeant Arnold backed away, Sheriff Boswell arrived in a white, unmarked SUV with blue and red flashing lights clearly displayed in the front window facing Greenland and near the front license plate marked with a sheriff star. Sheriff Boswell was followed closely by a third law enforcement vehicle also with emergency lights flashing. Greenland had a clear view of the front of Sheriff Boswell's car and the emergency lights as he was driving unobstructed down the driveway before choosing to turn and ram the vehicle.

Greenland also challenges the sufficiency of the evidence he "intended to cause serious injury or death to the sheriff." More specifically, Greenland asserts the district court found he lowered the bale tines when approaching the sheriff's vehicle and suggests he may have been attempting to aim the spears below the vehicle, not through it. We disagree. The unrefuted evidence is the original position of the bale tines passed mostly below *Monte's* vehicle. But Greenland specifically *raised* the bale tines to at least three feet high upon seeing the

approach of law enforcement—to a level of guaranteed impact. Despite the sheriff pulling to the side of the driveway, Greenland then purposely turned the tractor to ram the driver area of the sheriff's stopped vehicle. The decisions to raise the spears and to turn directly into a stopped vehicle support an inference Greenland intended to cause serious injury or death upon impact.

Greenland further challenges whether the tractor should be considered a dangerous weapon, that is, one used in a way indicating the intention to inflict death or serious injury with the capability of doing so. *See* Iowa Code § 702.7 (stating a "dangerous weapon" includes "any instrument or device of any sort whatsoever which is actually used in such a manner as to indicate that the defendant intends to inflict death or serious injury upon the other, and which, when so used, is capable of inflicting death upon a human being"). Greenland notes the slow speed of the tractor and the failure of the bale tines to penetrate all the way through the door.

"Dangerous weapons, in fact, can encompass almost any instrumentality under certain circumstances." *State v. Greene*, 709 N.W.2d 535, 537 (Iowa 2006); *see State v. Oldfather*, 306 N.W.2d 760, 763–64 (Iowa 1981) ("It is clear that an automobile, if it is used in such a manner as to indicate an intent to inflict death or serious injury, may be a 'dangerous weapon' . . . ."). Greenland driving his tractor with the raised bale tines directly into an occupied stopped vehicle meets the statutory definition of using a dangerous weapon. The sheriff had stopped by the side of the driveway to leave a clear path for Greenland to get past him. Instead, Greenland turned his tractor, with five-foot spears attached to the front at an approximately three-foot high level, directly into the side of the vehicle, with the

spears aimed at the driver seat. He then proceeded to push the vehicle down the driveway towards another law enforcement vehicle, around a corner, and into a ditch. If the sheriff's vehicle had been less sturdy or the angle of Greenland's impact had been different, the sheriff could have easily suffered serious injury or death.

The district court concluded, "While it is never possible to know exactly what someone is thinking when they do an act, the circumstances detailed in this case fully support the conclusion that the defendant intended death to someone that day if he could accomplish it." We discern no error in the court's conclusion and affirm.

*Merger.* Greenland next asserts his sentence is illegal because the offense assault of a peace officer is a lesser-included offense of attempt to commit murder of a peace officer and the offenses should have been merged into the greater offense.

The merger doctrine is codified in Iowa law:

> No person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted. If the jury returns a verdict of guilty of more than one offense and such verdict conflicts with this section, the court shall enter judgment of guilty of the greater of the offenses only.

Iowa Code § 701.9; *see State v. Hickman*, 623 N.W.2d 847, 850 (Iowa 2001). In determining whether two offenses merge, "we look to the elements of each and determine if the greater offense can be committed without also committing the lesser offense. If the greater offense cannot be committed without also committing the lesser offense, the lesser is included in the greater." *Hickman*, 623 N.W.2d at 850. Our supreme court has determined "it is impossible to commit attempted

murder without also performing an act which meets the statutory definition of an assault." *State v. Braggs*, 784 N.W.2d 31, 36–37 (Iowa 2010).[6]

Yet, whether convictions merge depends in part on how the case is presented and what factual issues the factfinder is asked to determine. *Love*, 858 N.W.2d at 724. If the factfinder is not asked to and does not find sufficient evidence to support two separate assaults in a single course of conduct, the offenses would merge, even if the evidence might be sufficient to support separate crimes. *Id.* at 724–25. However, if the factfinder determines separate and distinct criminal acts occurred to support each offense, merger is not necessary. *See id.* at 724.

The district court made specific factual findings and conclusions of law to support both verdicts. As to the charge of assault on an officer, the court found as follows:

> Directing a multi-thousand pound vehicle equipped with the equivalent of jousting lances on its front towards another vehicle with a person in it is an act intended to cause fear or pain to the person in the vehicle and which did in fact cause Sheriff Boswell to be in fear of painful or offensive contact.
> The tractor was at the time of the defendant's operation of it used in such a manner as to indicate that the defendant intended to inflict death or serious injury on the occupant of the vehicle he was ramming. Used in this manner, it was in fact capable of inflicting death.
> The court also concludes that the defendant specifically intended to inflict serious injury on whomever was in the vehicle. The defendant's actions in raising the bail tines to a higher level such that it was capable of impacting the vehicle rather than sliding under it, and his movement of the tractor off the driveway in pursuit of the vehicle, all indicate this specific intent.

---

[6] The State argues it is possible to commit attempted murder without committing an assault, ending with an assertion: "This court should overrule *Braggs* and hold that a conviction for assault does not merge into a conviction for attempted murder, under any circumstances." Because this court is "not at liberty to overrule controlling supreme court precedent," *State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014), we must apply the merger doctrine as established in *Braggs.*

The court also made relevant findings as to the attempt-to-commit-murder charge:

> The defendant's actions on May 23, 2019, were done with full awareness on his part. He intentionally attacked at least three vehicles on that date, including the sheriff's vehicle, and made contact with two of them. The contact between Monte Greenland's vehicle and the sheriff's vehicle were separated by some minutes, during which time the defendant had returned the tractor to a place near the shed, mounted a utility vehicle, dismounted the utility vehicle and remounted the tractor.
>
> A further consideration is the fact that the defendant had changed the position of the bail tines between the contact with Monte Greenland's vehicle and the sheriff's vehicle. He moved them to a position that improved the likelihood that the tines would make contact with the passenger compartment of any vehicle that the defendant was able to hit. He was aware that the sheriff's vehicle was occupied at the time that he rammed it with the tractor and he made contact with that vehicle in such a way that one bail tine penetrated the passenger compartment.
>
> The finder of fact is entitled to conclude that the defendant intends the natural results of his acts. The natural result of an act that causes the bail tines to penetrate the passenger compartment of an occupied vehicle is death to the occupant of the vehicle impacted. The defendant had a clear path to the road and chose instead to leave the driveway and turn towards the sheriff's vehicle. While it is never possible to know exactly what someone is thinking when they do an act, the circumstances detailed in this case fully support the conclusion that the defendant intended death to someone that day if he could accomplish it.

The court's findings use separate, distinct events within Greenland's course of conduct to support the two convictions. The action underlying the assault is the act of driving at Sheriff Boswell's vehicle, placing him in fear of painful or offensive contact. The action behind the attempt to commit murder offense is the physical ramming of Sheriff Boswell's vehicle with the raised bale spears directed at the driver seat of the vehicle. Moreover, even if we considered the driving at and ramming of Sheriff Boswell's vehicle to be a single course of action that would

merge, Greenland did not stop upon ramming the sheriff's vehicle. Instead, when the tractor was losing power after the initial strike, Greenland shifted gears to get moving again and pushed the vehicle around the corner and into a ditch. The act of switching gears in order to push the vehicle is sufficient to separate the actions into two distinct offenses.

We conclude the court to be correct when it specifically based the convictions on separate and distinct actions. Therefore, Greenland's convictions for assault on a peace officer with intent to cause a serious injury and attempt to commit murder of a peace officer do not merge. *See Love*, 858 N.W.2d at 724–25.

**AFFIRMED.**