**IN THE COURT OF APPEALS OF IOWA**

No. 13-0387
Filed April 16, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DARRELL LAMAR THOMAS,**
        Defendant-Appellant.
_____


Appeal from the Iowa District Court for Clinton County, Mark D. Cleve (trial) and Joel W. Barrows (sentencing), Judges.


Defendant appeals his conviction for robbery in the first degree.
**AFFIRMED.**



Mark C. Smith, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, and Michael L. Wolf, County Attorney, for appellee.


Considered by Danilson, C.J., Vaitheswaran, J., and Huitink, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**HUITINK, S.J.**

Defendant appeals his conviction for robbery in the first degree. On appeal, he claims he received ineffective assistance because his defense counsel did not object to the jury instruction defining a dangerous weapon. Because there was overwhelming evidence to find the pocketknife was a "dangerous weapon" based on its actual use, we conclude defendant has not met his burden to show he was prejudiced by his counsel's failure to object to the instruction. We determine he has not shown he received ineffective assistance of counsel. We affirm defendant's conviction for first-degree robbery.

## I. Background Facts & Proceedings.

The jury trial in this case produced the following facts. On October 18, 2012, Shirley Reed was the owner and operator of the Library Pawn Shop in Clinton, Iowa. A man, later identified as Darrell Thomas, came in at about 12:30 p.m. and asked to see several rings. While Reed was putting one of the rings back in the case, Thomas suddenly put a knife to her throat and forced her down to the floor. He took jewelry from the display case. Thomas told Reed, "You can't make any noise," and "I will kill you." Reed testified Thomas held the knife "[i]n front of my throat usually, but usually he had it in his hand just poking it towards me." She stated, "I had never been so frightened in my whole life and I probably will never forget it."

Thomas had Reed move toward a counter containing coins. He again had her lie down on the floor, and he tied her arms behind her back with electrical cords. Thomas took bills and coins from a money box. As Thomas was leaving

he yelled, "Did you see my face?" and "I am going to kill you. I will come back and kill you."

After Thomas left, Reed called the police. Officers were able to retrieve a videotape of the incident from the video surveillance system at the pawn shop. They released a photograph of the suspect to the media. At about 5:11 p.m., a desk clerk at a hotel in Davenport told officers one of the guests at the hotel appeared to match the picture of the suspect. When officers arrived at the hotel, they found Thomas had left in a cab.

After contacting the cab company, the officers followed Thomas to another pawn shop, where he was apprehended. Officers found a pocketknife with a blade about three inches long in his pocket. They then obtained a search warrant for Thomas's hotel room. The officers found several items of jewelry, which Reed later identified as coming from her pawn shop. Thomas gave officers a written statement which stated, "I reached out for the woman and showed the knife." He also stated that when he left, "I promised I wasn't going to do anything drastic if she didn't scream."

Thomas was charged with robbery in the first degree, in violation of Iowa Code sections 711.1, .2 (2011). The case proceeded to a jury trial commencing on January 14, 2013. Thomas conceded there was sufficient evidence to show he committed second-degree robbery but argued there was insufficient evidence to show he was armed with a dangerous weapon, which would make the offense first-degree robbery. *See* Iowa Code § 711.2 (providing a person commits first-degree robbery if the person is "armed with a dangerous weapon" while perpetrating a robbery). The jury found Thomas guilty of first-degree robbery.

He was sentenced to a term of imprisonment not to exceed twenty-five years. Thomas now appeals, claiming he received ineffective assistance of counsel.

## II.  Standard of Review.

We review claims of ineffective assistance of counsel de novo. *Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012).  To establish a claim of ineffective assistance of counsel, a defendant must show (1) the attorney failed to perform an essential duty and (2) prejudice resulted to the extent it denied the defendant a fair trial. *State v. Carroll*, 767 N.W.2d 638, 641 (Iowa 2009).  A defendant has the burden to show by a preponderance of the evidence that counsel was ineffective. *See State v. McKettrick*, 480 N.W.2d 52, 55 (Iowa 1992).

## III.  Ineffective Assistance.

The district court submitted the following instruction to the jury:

> A "dangerous weapon" is any device or instrument designed primarily for use in inflicting death or injury upon a human being or animal, and when used in its designed manner is capable of inflicting death upon a human being.  It is also any sort of instrument or device actually used in such a way as to indicate the user intended to inflict death or serious injury, and when so used is capable of inflicting death upon a human being.

Thomas claims he received ineffective assistance because his defense counsel did not object to the portion of the instruction referring to a device or instrument "designed primarily for use in inflicting death or injury," because there was no evidence the pocketknife had been designed primarily for use in inflicting death or injury.  He asserts the jury could have improperly found he was armed with a dangerous weapon under this portion of the instruction.  He asks to have his conviction reversed and the case remanded for a new trial.

The term "dangerous weapon" is defined in three different alternatives in section 702.7. *State v. Ortiz*, 789 N.W.2d 761, 765 (Iowa 2010). First, a dangerous weapon is "any device or instrument designed primarily for use in inflicting death or injury upon a human being or animal, and which is capable of inflicting death upon a human being when used in the manner for which is was designed." Iowa Code § 702.7. Second, a dangerous weapon is "any instrument or device of any sort whatsoever which is actually used in such a manner as to indicate that the defendant intends to inflict death or serious injury upon the other, and which, when so used, is capable of inflicting death upon a human being." *Id.* Third, the statute lists several items which are considered to be per se dangerous weapons. *Id.*; *Ortiz*, 789 N.W.2d at 765.

There is no claim in the present case that the pocketknife was considered to be a per se dangerous weapon, and the third alternative was not included in the jury instruction. The State acknowledges that as to the first alternative, a pocketknife is not designed primarily for use in inflicting death or injury. *See State v. Hill*, 140 N.W.2d 731, 735-36 (Iowa 1966) (including pocketknives in a list of items "which are manufactured and generally used for peaceful and proper purposes"). The State claims, however, Thomas has not shown he received ineffective assistance of counsel because the first alternative was included in the instruction.

In considering a claim of ineffective assistance of counsel, we may consider the second prong first—that prejudice resulted to the extent it denied the defendant a fair trial. *State v. Pace*, 602 N.W.2d 764, 774 (Iowa 1999). When a defendant is unable to show prejudice, a claim of ineffective assistance

may be decided on that ground alone. *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). "A defendant establishes prejudice by showing 'there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different.'" *Pace*, 602 N.W.2d at 774 (citations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ledezma*, 626 N.W.2d at 143.

Thomas is required to establish by a preponderance of the evidence there was a reasonable probability of a different verdict if his defense counsel had objected to the language in the instruction referring to the first alternative, "any device or instrument designed primarily for use in inflicting death or injury." *See id.* Because there was overwhelming evidence to support the second alternative in the instruction to find the pocketknife was a "dangerous weapon," we conclude Thomas has not met his burden to show he was prejudiced by his counsel's failure to object to the instruction. *See State v. Lambert*, 612 N.W.2d 810, 814-15 (Iowa 2000) (noting that although the jury was improperly instructed a metal pipe was a dangerous weapon per se, in light of evidence defendant brandished the pipe in a manner indicating an intent to inflict death or serious injury, there was not a reasonable probability the result of the trial would have been different if defense counsel had objected to the instruction).

When a knife is not a dangerous weapon per se, that is if its blade is less than five inches in length, the knife's character as a dangerous weapon is dependent upon a showing of its actual use as a dangerous weapon. *See* Iowa Code § 702.7; *State v. Durham*, 323 N.W.2d 243, 245 (Iowa 1982). The manner in which a defendant uses a knife may indicate the defendant intends to cause

death or serious injury to another. *State v. Berry*, 549 N.W.2d 316, 318 (Iowa Ct. App. 1996).

The evidence in the present case shows Thomas held a knife to the throat of Reed, who was an elderly woman, while he robbed her pawn shop. Reed testified that during the incident he either held the knife to her throat or poked it toward her. She stated he repeatedly told her, "I will kill you," "I am going to kill you," and "I will come back and kill you." Thomas's own written statement indicates he reached out for Reed and showed her the knife. He also stated he told her he would not do anything drastic if she did not scream, which indicates he would have done something drastic if she had screamed.

Based on the evidence, we conclude Thomas has not shown a reasonable probability the result of the trial would have been different if defense counsel had objected to the jury instruction defining a dangerous weapon. We determine he has not shown he received ineffective assistance of counsel. We affirm Thomas's conviction for first-degree robbery.

**AFFIRMED.**