# IN THE COURT OF APPEALS OF IOWA

No. 14-0969
Filed November 23, 2016

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**BETTY ANN NALL,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Terry R. Rickers, Judge.

Betty Nall appeals her convictions for theft in the third degree and theft in the second degree. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kevin R. Cmelik and Thomas E. Bakke, Assistant Attorneys General, for appellee.

Considered by Potterfield, P.J., Doyle, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MAHAN, Senior Judge.**

Betty Nall appeals from her convictions in two cases, FECR268329 and FECR268551, challenging the factual basis for her guilty plea to the charge of theft in the third degree and the sufficiency of the evidence to support the district court's finding of guilt to the charge of theft in the second degree.  We affirm.

## I.    *Background Facts and Proceedings*

Nall was involved in a "Secret Shopper scam off the internet."  Nall received money orders in the mail, cashed them, and returned most of the money while keeping a portion for herself.  Nall knew the scam was fraudulent.

*FECR268329.*  In July 2013, Nall received a money order for $890, which she knew was not legitimate, and she took it to a veterinarian's clinic where she "passed it as payment for [her] animals being boarded."  The total amount owed by Nall for the boarding was $1265.  Nall crossed out her name on the $890 money order and changed it to the name of the veterinarian clinic; she agreed to return to pay the remainder of the balance within a week and took her pets.  The bank declined the money order, and the clinic contacted Nall to have her return and pay the full balance.  Nall never returned or made any payments.

The State filed a trial information charging Nall with forgery (enhanced as a habitual offender) and theft in the third degree, in violation of Iowa Code sections 715A.2(2)(a)(1), 902.8, 714.1(1), and 714.2(3) (2013).  Nall pled guilty to both charges.

*FECR268551.*  Meanwhile, in August 2012, Nall opened a bank account with a money order for $890.  The next day, she deposited a check for $1890 from Buck Bros. into the account, and then she withdrew $750 in cash.  A few

days later, Nall deposited a $2350 check from the Monseen D. Conn Revocable Living Trust as well as a duplicate of the $890 money order she had previously deposited, and then she withdrew $1500 in cash. Nall also wrote checks on the account. Nall knew the checks she deposited into the account were fraudulent. The bank eventually learned all the checks deposited were counterfeit. As of June 2013, Nall's account had a negative $2736 balance.

The State filed a trial information charging Nall with four counts of forgery (enhanced as a habitual offender) and one count of theft in the second degree (enhanced as a habitual offender), in violation of sections 715A.2(1), 715A.2(2)(a)(3), 714.2(2), and 902.8. Following a bench trial on the minutes of testimony, the district court found Nall guilty as charged.

Nall filed untimely appeals from her convictions. The supreme court granted Nall's request for a delayed appeal in FECR268329 and FECR268551 but denied Nall's "attempt to take a direct appeal from her probation revocation in [an unrelated case,] FECR251041." The supreme court transferred the consolidated case to this court. Further facts will be discussed below as relevant to the issues presented by Nall on appeal.

## II.    *Factual Basis for Guilty Plea – FECR268329*

Nall challenges her conviction for theft in the third degree, claiming the record does not establish a factual basis for her guilty plea. Nall's failure to timely file a motion in arrest of judgment after entry of her guilty plea bars a direct appeal of her conviction. *See* Iowa R. Crim. P. 2.24(3)(a). However, Nall also challenges the guilty plea through an ineffective-assistance-of-counsel claim. When a defendant claims trial counsel was ineffective for permitting a guilty plea

to a charge not supported by a factual basis, our review is de novo. *See State v. Finney*, 834 N.W.2d 46, 49 (Iowa 2013).

To prevail on her claim, Nall must show counsel (1) failed to perform an essential duty and (2) prejudice resulted. *See State v. Ary*, 877 N.W.2d 686, 704 (Iowa 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "We resolve a claim of ineffective assistance of counsel on direct appeal only when the record is adequate." *Id.* Neither party suggests we preserve Nall's ineffective assistance claim for a postconviction proceeding, and we find the record adequate to address the claim on direct appeal.

It is axiomatic that a trial court may not accept a guilty plea without first determining the plea has a factual basis, and that factual basis must be disclosed in the record. *Finney*, 834 N.W.2d at 61-62; *see also* Iowa R. Crim. P. 2.8(2)(b). When trial counsel permits a defendant to plead guilty and waive the right to file a motion in arrest of judgment absent a factual basis to support the guilty plea, counsel violates an essential duty, and prejudice is presumed. *State v. Ortiz*, 789 N.W.2d 761, 764-65 (Iowa 2010). We determine whether a factual basis existed by considering "the entire record before the district court" at the guilty plea hearing. *Finney*, 834 N.W.2d at 62 (citation omitted).

Nall concedes her actions "may constitute theft in violation of Iowa Code section 714.1(6),"[1] but she contends her actions do not "constitute theft by

---

[1] That subsection provides a person commits theft when the person

> [m]akes, utters, draws, delivers, or gives any check, share draft, draft, or written order on any bank, credit union, person, or corporation, and obtains property, the use of property, including rental property, or service in exchange for such instrument, if the person knows that such check, share draft, draft, or written order will not be paid when presented.

Iowa Code § 714.1(6).

'taking' within the meaning of Iowa Code section 714.1(1)"—the subsection under which she pled guilty. Section 714.1(1) provides: "A person commits theft when the person . . . [t]akes possession or control of the property of another, or property in the possession of another, with the intent to deprive the other thereof." The term "[p]roperty" is used to describe "anything of value," including "labor" and "services." Iowa Code § 702.14.

Specifically, Nall claims her actions do not constitute theft by taking because the veterinarian clinic "voluntarily" provided Nall with boarding services in exchange for a fraudulent money order; in other words, she did not take possession of property or services of the veterinarian clinic without its consent or authority. This claim is unpersuasive. Nall presented a money order for $890— which she knew was fraudulent—as partial payment for the clinic's boarding services and so the clinic would release her pets to her. Nall promised to return within a week to pay the remainder of the balance. Nall did not return, and meanwhile, the fraudulent money order was rejected by the bank. Nall never returned and never paid any portion of the $1265 bill. The fact that the money order was honored by the clinic when Nall paid for services from the clinic does not relieve her of criminal liability for obtaining services she knew she had no right to take. *See, e.g.*, *State v. Hemple-Anderson*, No. 13-1048, 2014 WL 957434, at *2 (Iowa Ct. App. Mar. 12, 2014) ("Hemple-Anderson's written guilty plea states that she used the merchandise card knowing it was obtained by returning stolen merchandise. This provides a factual basis to support both a theft by taking and a theft by deception. . . . The fact that the merchandise card was honored by Kohl's when she went to obtain property from the store does not

relieve her of criminal liability for taking the property she knew she had no right to take.").

Because there was a factual basis to support Nall's guilty plea, we conclude counsel did not provide ineffective assistance in permitting Nall to waive her right to challenge the plea through a motion in arrest of judgment. We affirm on this issue.

## III.    Sufficiency of the Evidence – FECR268551

Nall challenges the sufficiency of evidence supporting the district court's findings of guilt on her conviction for theft in the second degree. We review claims of insufficient evidence for correction of errors at law. *State v. Robinson*, 859 N.W.2d 464, 467 (Iowa 2015). "A guilty verdict must be supported by substantial evidence." *State v. Serrato*, 787 N.W.2d 462, 465 (Iowa 2010). We consider all the evidence in the record, not just the evidence supporting the finding of guilt, and view the record in the light most favorable to the State. *See Robinson*, 859 N.W.2d at 467. Substantial evidence must do more than raise suspicion or speculation; it must convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt. *See id.*

The district court set forth the elements of theft in the second degree the State was required to prove as follows: "[I]n the August 2012 time frame [Nall] took possession or control of the property of another. The property had a value of at least $1000. And [Nall] took the property with the intent to keep it and deprive the legitimate owner of the property." *See* Iowa Code §§ 714.1(1), 714.2(2). Following a trial on the minutes, the court found Nall guilty as charged.

Similar to her claim above, Nall contends her withdrawals of $750 on August 3 and $1500 on August 7 from her bank account "do not constitute theft by 'taking'" because "[t]here is no showing [she] took possession of the money without the bank's authority or consent." We disagree.

The record supports a finding that Nall knew the original $890 money order she used to open the bank account in August 2012 was fraudulent. At a minimum, the record shows Nall had serious doubts as to the legitimacy of the money order: Nall knew about secret shopper scams, she was aware the manner in which she received the money order was the same as those types of scams, and she knew such a scam was fraudulent "because the whole plan was to pass a fake check and to send money back" while keeping part of the money. "[C]redibility determinations are an essential function of the fact finder." *State v. Dewitt*, 811 N.W.2d 460, 476 (Iowa 2012).

The day after opening the account, Nall deposited a $1890 check from the same scam in her bank account and then withdrew $750 in cash. A few days later, Nall deposited another $2350 check from the scam, as well as a duplicate of the $890 money order she had previously deposited, and then withdrew $1500 in cash. The bank eventually learned all the checks deposited were counterfeit, and Nall's account accrued a negative balance. The record supports a finding that Nall's withdrawals of cash constituted a theft by taking.

We conclude substantial evidence supports the district court's finding of guilt. Accordingly, we affirm on this issue.

*IV.* *Conclusion*

We affirm Nall's convictions and sentences for theft in the third degree in FECR268329 and theft in the second degree in FECR268551.

**AFFIRMED.**