# IN THE COURT OF APPEALS OF IOWA

No. 18-2010
Filed September 2, 2020

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**JACK DEATON,**
　　　Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Thomas Reidel, Judge.

The defendant appeals from his convictions for assault by using or displaying a dangerous weapon and assault causing bodily injury. **AFFIRMED.**

Zeke R. McCartney of Reynolds & Kenline, L.L.P., Dubuque, for appellant.

Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.

Considered by Bower, C.J., Greer, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**POTTERFIELD, Senior Judge.**

Jack Deaton appeals from his convictions for assault by using or displaying a dangerous weapon and assault causing bodily injury. He argues there is insufficient evidence to support his conviction for assault with a dangerous weapon. He also raises several claims of ineffective assistance, including that counsel failed to move for a new trial on both counts based on the weight of the evidence being contrary to the verdicts and failed to object to several portions of testimony.[1]

**I. Background Facts and Proceedings.**

On June 25, 2017, around 8:40 p.m., Scott Fugate's son informed Fugate that a neighbor, Deaton, was in their shared alleyway and using a shovel to chip away at another neighbor's foundation. Fugate and his son, who was fourteen at the time, went to the alley and confronted Deaton. By the end of their interaction, Deaton had pepper sprayed Fugate in the face. Fugate's family called 911, and local police and medical personnel arrived soon thereafter. Deaton did not deny spraying Fugate in the face, but he insisted his actions were justified, claiming Fugate had been the aggressor and acted in a threatening manner, which put Deaton in fear for his safety. Deaton was arrested and charged with assault by using or displaying a dangerous weapon (shovel) and assault causing bodily injury.

---

[1] Judgment was entered against Deaton on November 16, 2018, so the amended Iowa Code section 814.7 (Supp. 2019) does not preclude him from raising these claims of ineffective assistance on direct appeal. *See State v. Damme*, 944 N.W.2d 98, 103 n.1 (Iowa 2020) (noting "the 2019 amendments to Iowa Code sections 814.6 and 814.7 do not apply retroactively to direct appeals from a judgment and sentence entered before the statute's effective date of July 1, 2019" and "reiterat[ing] that date of the *judgment* being appealed controls the applicability of the" amended code sections).

Following a jury trial in July 2018, Deaton was found guilty as charged on both counts. He was later sentenced to a term of incarceration of 360 days with all but sixty days suspended for each conviction. The court ordered Deaton to serve the two sentences concurrently. Deaton appeals.

## II. Discussion.

### A. Sufficiency of the Evidence.

In order for the jury to properly convict Deaton of assault by using or displaying a dangerous weapon, the State had the burden to prove:

> 1. On or about the 25th of June, 2017, the defendant did an act that was
> a. intended to cause pain or injury to, or
> b. intended to result in physical contact, or
> c. intended to place Scott Fugate in fear of an immediate physical contact that would have been painful, injurious, insulting or offensive to Scott Fugate.
> 2. The defendant had the apparent ability to do the act.
> 3. While so doing, the defendant used or displayed a dangerous weapon in connection with the assault.
> 4. The State must prove the defendant was not acting with justification.

The jury was further instructed that:

> A "dangerous weapon" is . . . any sort of instrument or device actually used in such a way as to indicate the user intended to inflict death or serious injury, and when so used is capable of inflicting death.
> A shovel is a dangerous weapon when used in such a manner as to indicate the defendant intends to inflict death or serious injury upon another.

Deaton maintains there is insufficient evidence to support his conviction. Specifically, he argues there was insufficient evidence for the jury to find the shovel was a dangerous weapon because Deaton did not "actually use [the shovel] in

such a way as to indicate" he "intended to inflict death or serious injury."[2] Deaton focuses on the fact there was no evidence he swung the shovel at Fugate or Fugate's son. He otherwise relies on evidence presented in his defense at trial—rather than the evidence given by the State's witnesses—to claim there was no evidence he "objectively manifest[ed] to the victim his or her intent to inflict serious harm upon the victim." *State v. Ortiz*, 789 N.W.2d 761, 767 (Iowa 2010). But in reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. *See State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012).

Fugate testified that as he and his son walked toward where Deaton was standing in the alley, Fugate told Deaton he could not be on the neighbor's property. In response, Deaton "got erratic" and "told [Fugate] to mind [his] business, get out of there." Then Deaton "picked [the shovel] up like a bat." Deaton did not swing the shovel at Fugate, but he continued to hold it aloft. Fugate asked Deaton if he was going to hit him with the shovel, and Deaton, still holding the shovel up, told Fugate to "be on [his] way." Deaton then took a step toward Fugate's son, which led Fugate to step between the two and tell his son they were leaving. As Fugate and his son started to walk away, Fugate noticed something in Deaton's hand and turned to look at him. It was then that Deaton sprayed him

---

[2] There are alternative means for finding an item is a dangerous weapon. An item is a "dangerous weapon" if it is (1) one of the per se dangerous weapons listed in Iowa Code section 702.7; (2) "any instrument or device designed primarily for use in inflicting death or injury . . . and is capable of inflicting death . . . when used in the manner for which it was designed"; or 3) an "instrument or device of any sort . . . which is actually used in such a manner as to indicate that the defendant intends to inflict death or serious injury upon the other, and which, when so used, is capable of inflicting death upon a human being[.]" Iowa Code § 702.7.

Deaton and the State agree that only the third alternative is at issue in this case.

in the face with pepper spray. Fugate's son testified similarly at trial, stating that while his father and Deaton were talking, Deaton was holding the shovel "above his head, like holding it like a bat almost." He noticed Deaton "walked closer to [their] driveway," where he and his father were standing, while holding the shovel up.

These actions are enough to find Deaton objectively manifested his intent to inflict serious harm with the shovel. While he had the shovel with him before the confrontation began, Deaton picked it up and held it "like a bat"—establishing an intent to use the shovel as a weapon against Fugate or his son as opposed to using the shovel as the tool was meant to be used. *See id.* ("Our past cases suggest that a defendant objectively indicates intent to inflict harm when the defendant engages in a personal confrontation with another while possessing an instrument capable of causing bodily harm."). We think this is analogous to *State v. Lambert*, 612 N.W.2d 810, 815 (Iowa 2000), in which our supreme court held that a three-foot metal pipe was used as a dangerous weapon when the defendant stood over his victim "poised to strike." That Deaton neither swung the shovel at nor hit Fugate or his son with the shovel does not defeat the finding of a dangerous weapon. Substantial evidence supports this conviction.

**B. Ineffective Assistance of Trial Counsel.**

Deaton claims trial counsel provided ineffective assistance in four ways: (1) failing to move for new trial based on the weight of the evidence being contrary to the guilty verdicts[3]; (2) not objecting to various witnesses' testimony about how

---

[3] Deaton first contends we should consider whether the district court abused its discretion in denying his motion for new trial based on the weight of the evidence

the police pretended to arrest Fugate so Deaton would come out of his home, as that evidence was "irrelevant," "substantially outweighed by the danger of unfair prejudice, confusing issues, and misleading the jury"; (3) not objecting to Fugate's testimony that Deaton held the shovel "[l]ike a weapon, not like a tool"; and (4) not objecting to and joining others in referring to Fugate as "the victim" during trial.

These claims have not been sufficiently developed to enable our review of them on direct appeal, so we preserve all of Deaton's claims of ineffective assistance. *See State v. Harris*, 919 N.W.2d 753, 754 (Iowa 2018) ("If the development of the ineffective-assistance claim in the appellate brief was insufficient to allow its consideration, the court of appeals should not consider the claim, but it should not outright reject it."). Moreover, in order to fairly consider Deaton's claims of ineffective assistance, we believe the record should be more fully developed, including allowing trial counsel an opportunity to respond. *See*

---

being contrary to the verdicts. But, in spite of his contention otherwise, Deaton never asked the district court to decide whether the weight of the evidence was contrary to the verdicts, so the district court never ruled on that issue. Deaton moved for a new trial, but that motion was based on the claim he received ineffective assistance—not that the verdict was contrary to the weight of the evidence. *See State v. Kramer*, No. 16-2048, 2018 WL 346454, at *6 (Iowa Ct. App. Jan. 10, 2018) (concluding defendant's weight-of-the-evidence claim was not preserved, even though he filed two motions for new trial because neither "specifically challenged the weight of the evidence"). And the district court ruled accordingly, concluding it "c[ould] not find that [trial counsel was] ineffective." The issue of whether the district court abused its discretion is denying Deaton's motion for new trial based on the weight of the evidence is not an issue preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). So we consider Deaton's weight-of-the-evidence claims within the framework of ineffective assistance of counsel, as he raised in the alternative. *See State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010) ("Ineffective-assistance-of-counsel claims are an exception to the traditional error-preservation rules.").

*State v. Clay*, 824 N.W.2d 488, 502 (Iowa 2012) (requiring the defendant "to bring all his ineffective-assistance-of-counsel claims in a postconviction relief action, because he raises multiple claims, some of which require further development of the record."); *State v. Brubaker*, 805 N.W.2d 164, 170 (Iowa 2011) ("We acknowledge that ineffective-assistance-of-counsel claims are normally considered in postconviction relief proceedings. A primary reason for doing so is to ensure development of an adequate record to allow the attorney charged to respond to the defendant's claims." (citation omitted)); *see also State v. Plain*, 898 N.W.2d 801, 820 (Iowa 2017) (concluding "the prosecutor erred during closing argument in persistently using the term 'victim' to refer to the complaining witness" but concluding the defendant was not prejudiced by the error); *State v. Walker*, No. 06-0259, 2007 WL 1828321, at *3 (Iowa Ct. App. June 27, 2007) ("We do not . . . sanction using 'victim' in a jury instruction as we recognize the use of the word can mislead or prejudice a defendant.").

**III. Conclusion.**

Sufficient evidence supports Deaton's conviction for assault by using or displaying a dangerous weapon. The rest of Deaton's claims, brought under the framework of ineffective assistance, are preserved for a postconviction-relief action. We affirm Deaton's convictions.

**AFFIRMED.**