# IN THE COURT OF APPEALS OF IOWA

No. 23-0859
Filed April 24, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**SYLVESTER LAVELLE TROTTER,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Story County, Steven P. Van Marel, Judge.

A defendant appeals his convictions for operating while intoxicated, third offense, and interference with official acts causing bodily injury, challenging the denial of his motion in arrest of judgment. **AFFIRMED.**

Shawn Smith of The Smith Law Firm, PC, Ames, for appellant.

Brenna Bird, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

Considered by Bower, C.J., and Greer and Chicchelly, JJ.

**GREER, Judge.**

After pleading guilty to two charges—operating while intoxicated (OWI), third offense and interference with official acts—Sylvester Trotter presented a witness who he asserts established his actual innocence. Does such evidence require that the district court grant his later-filed motion in arrest of judgment because of his claim there is now no factual basis to support his guilty pleas? Because the court relied upon Trotter's admissions at the plea hearing and found the actual-innocence evidence presented to be unconvincing, we find no abuse of the court's discretion in denying the motion in arrest of judgment; we affirm.

**I. Background Facts and Prior Proceedings.**

Around 9:40 p.m. on February 6, 2023, Debbie Aldinger was walking her dog. She heard a loud crash, looked around, and saw a white Ford Edge crash into the back passenger-side bumper of a parked white Toyota Highlander, back up, and hit the Highlander a second and third time with its front driver's side bumper before pulling around and parking sideways across the sidewalk with its front passenger tire on the curb and its parking lights left on. Aldinger approached the Ford Edge and looked inside the driver's side window to see a Black man in the driver's seat; she believed the man was asleep or passed out. Aldinger called law enforcement and reported that she saw the man driving the vehicle and that he was still there. She continued watching the vehicle until law enforcement arrived.

Ames Police Officers Celena Rohland and Daniel Ramirez responded to the scene. After speaking with Aldinger, they approached the vehicle and noticed that the man in the driver's seat was not responsive and did not react when they used their flashlights to scan the inside of the vehicle; no one else was in the vehicle.

After rousing the man in the driver's seat, officers noticed that he had bloodshot and watery eyes, very slurred speech, and a strong odor of alcohol coming from his breath. They also located alcohol inside of the vehicle; there was a mini bottle of hard alcohol—about shot size—on the passenger seat and an open can of beer in the driver's-side door. Aldinger reported that the man in the car the officers were interacting with was the same man she saw driving the vehicle. She noted that no one had exited the vehicle between the loud crash and officers responding.

Officers Tyler Fischer, Scott Clewell, and Cullen Kothmann also responded to the scene. Officer Kothmann noticed there was fresh damage to the rear passenger-side bumper of the Toyota Highlander that matched fresh damage to the front driver's-side corner of the Ford Edge. Officer Rohland attempted to speak with the man through the driver's side window. The man declined to participate in Standardized Field Sobriety Testing or to provide any driver's license, insurance, or registration information. While further interacting with the man, the officers noticed that he had a neck tattoo of the word "Noel." The officers learned that Trotter had a "Noel" neck tattoo. The man also told Officer Fisher that he was "Officer Trotter" and that he "had that battery with you, yeah."

Officer Rohland requested that dispatch look into the ownership history of the white Ford Edge; dispatch reported that the registered owner, Ka'ticia Hayden, was associated with Trotter. Around this time, the man in the vehicle was speaking on the phone with Hayden, and she eventually arrived at the scene as well. She insisted that Trotter had not been driving because he was supposed to just be waiting in the vehicle. Based on the neck tattoo, the man referring to himself as "Officer Trotter," his association with Hayden, and Officer Fischer's past

interactions with him, officers concluded that he was Trotter. Trotter would not agree to exit the vehicle voluntarily or to cooperate with the officers' requests.

After the officers requested additional assistance, Ames Police Sergeant Cole Hippen arrived. Officer Fisher commanded Trotter out of the vehicle. Trotter refused and asked, "How you going to take me to jail?" Officers attempted to open the door and, after some time, overcame Trotter and opened the door. They pulled Trotter out of the vehicle by his arms, and Trotter responded by swinging his arms at them and swearing. Officer Fischer deployed his Taser, hitting Trotter in the upper back. Trotter fell to the ground, and officers handcuffed him. They attempted to place him in the back of Officer Rohland's patrol vehicle, but Trotter resisted and continued struggling. Sergeant Hippen pulled Trotter into the backseat by pulling on his arms. After leaving the scene, Sergeant Hippen noticed that he had abrasions on the knuckles of his right hand, which were bleeding.

The State charged Trotter with ten crimes, including OWI, third offense, a class "D" felony, in violation of Iowa Code section 321J.2(2)(c) (2023);[1] and interference with official acts causing bodily injury, a serious misdemeanor, in violation of section 719.1(1)(a) and (c).[2] In the minutes of testimony attached to

---

[1] Trotter had multiple previous convictions for OWI—in cases FECR027304, OWCR011274, OWCR011440, OWCR025538, and OWCR014083.

[2] The other charges were first-degree harassment, an aggravated misdemeanor, in violation of section 708.7(1) and (2); third-degree criminal mischief, an aggravated misdemeanor, in violation of section 716.5; driving while barred, an aggravated misdemeanor, in violation of section 321.561; and two counts of driving while license denied or revoked, a serious misdemeanor, in violation of section 321J.21. The State also pursued a sentencing enhancement pursuant to section 902.8. Under separate case numbers, the State also charged Trotter with failure to provide proof of financial liability—accident, a simple misdemeanor, in violation of section 321.20B; striking an unattended vehicle, a simple misdemeanor, in violation of section 321.264; harassment of a public official or

the trial information, the State summarized the observations of Aldinger and the six law enforcement officers on the scene on February 6.

In April, by a written plea agreement, Trotter pled guilty to the charges of OWI, third offense, and interference with official acts, and the court accepted the plea. In the order accepting the plea and setting sentencing, the court wrote that it found "there is a factual basis for [Trotter's] plea of guilty." The next week, Trotter filed a motion in arrest of judgment. In the motion, Trotter wrote that he "now wishes to withdraw his pleas based on actual innocence." He also submitted a letter signed by Savon Walker as an exhibit. In the letter, Walker wrote, "on February 6th 2023 at approximat[e]ly 9:00 PM I Savon M Walker was driving [Hayden]'s Ford Edge. I had dropped . . . Trotter off prior to driving to the grocery store." He claimed that he "was not aware of hitting anyone. I didn't have my glasses on and it was fairly dark. After parkin[g] I waited for my girlfriend to get me and we delivered the Ford Edge keys to [Hayden]." He then added "Trotter did not opperate [sic] the vehicle at all on February 6th 2023."

The court held a hearing on the motion in May. Walker testified at the hearing, stating that he was driving Hayden's Ford Edge on February 6 and was driving for "I want to say probably about—about four hours." He stopped driving "about 9, around like 8:30-ish, around that, about 9:00." Walker claimed that after that time, he returned the vehicle's keys to Hayden. When asked if there were any incidents that occurred with the vehicle, Walker testified, "I have glasses while I'm driving. So I wasn't wearing my glasses that night. It was fairly dark. And if I did

---

employee, a simple misdemeanor, in violation of section 718.4; and operating without interlock, a simple misdemeanor, in violation of section 321J.4(8)(c).

anything while I was parking or whatnot, I wasn't aware of it." Walker did not think that there was a "collision" or "if there was, I couldn't tell." When questioned about this timeline on cross-examination, Walker insisted that it "couldn't have been later than 9:00" that he was driving. He added that after he left the vehicle, Trotter also got out of the vehicle and went into a nearby building. Walker believed there was only one set of keys to the vehicle and that he took that set with him. Lastly, Walker stated that he and Trotter are close friends and see each other nearly every other day.

After Walker's testimony, the State asked the court to find that Trotter had not met his "burden to prove by clear and convincing evidence that no reasonable fact finder could convict [Trotter]." The court agreed and denied Trotter's motion in arrest of judgment, stating that it found that Trotter had

> not met [his] burden here of showing by clear and convincing evidence that no reasonable finder of fact would have or could convict the defendant for the crimes he's pled guilty to. A reasonable finder of fact could easily, easily disregard Mr. Walker's testimony and rely on the testimony presented by the State in the minutes of testimony. So the defendant's motion in arrest of judgment is denied.

At a separate sentencing hearing later in the month, the court sentenced Trotter to an indeterminate term not to exceed five years in prison under the OWI continuum with a mandatory minimum of thirty days for the OWI and one year in prison for the conviction of interference with official acts; the sentences are to run consecutively. The court dismissed the remaining charges. Trotter appeals.[3]

---

[3] Although Trotter did not file an application for discretionary review, we are treating his notice of appeal as such. *See* Iowa R. App. P. 6.151(1) ("If any case is initiated by a notice of appeal, an application for interlocutory appeal, an application for discretionary review, or a petition for writ of certiorari and the appellate court determines another form of review was the proper one, the case will not be

**II. Standard of Review.**

We review a trial court's grant or denial of a motion in arrest of judgment for abuse of discretion. *State v. Smith*, 753 N.W.2d 562, 564 (Iowa 2008). "An abuse of discretion will only be found where the trial court's discretion was exercised on clearly untenable or unreasonable grounds." *Id.* "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Lee v. State*, 906 N.W.2d 186, 194 (Iowa 2018) (citation omitted). To the extent Trotter's actual innocence claim raises constitutional questions, we review de novo. *Dewberry v. State*, 941 N.W.2d 1, 4 (Iowa 2019).

**III. Analysis.**

On appeal, Trotter makes two arguments packaged as one. First, Trotter argues that there was not a factual basis to support his guilty plea because there was no evidence that he was driving the vehicle. Second, relatedly, he argues that there could not have been a factual basis because he is actually innocent. The State responds that because Trotter did not raise the factual basis claim in his motion in arrest of judgment, we cannot consider it here. Because the claims are intertwined, we elect to bypass this error-preservation argument and proceed to the merits of both claims.

---

dismissed, but will proceed as though the proper form of review had been requested."); Iowa Code § 814.6(2)(f) ("Discretionary review may be available . . . [from] [a]n order denying a motion in arrest of judgment on grounds other than an ineffective assistance of counsel claim."); *State v. Tutson*, No. 21-0990, 2022 WL 1236763, at *1 (Iowa Ct. App. Apr. 27, 2022) ("We conclude an application for discretionary review is the appropriate vehicle to challenge a ruling on a motion in arrest of judgment.").

Regarding the factual basis for a plea, "[t]he court shall not accept a guilty plea without establishing that the plea is made voluntarily and intelligently and has a factual basis." Iowa R. Crim. P. 2.8(2)(b). "In deciding whether a factual basis exists, we consider the entire record before the district court at the guilty plea hearing, including any statements made by the defendant, facts related by the prosecutor, the minutes of testimony, and the presentence report." *State v. Schminkey*, 597 N.W.2d 785, 788 (Iowa 1999). The court is not required to "have before it evidence that the crime was committed beyond a reasonable doubt" to accept a guilty plea, "but only [evidence] that there be a factual basis to support the charge." *State v. Finney*, 834 N.W.2d 46, 62 (Iowa 2013). "[T]he record does not need to show the totality of evidence necessary to support a guilty conviction, but it need only demonstrate facts that support the offense." *State v. Ortiz*, 789 N.W.2d 761, 768 (Iowa 2010). And regarding a claim of actual innocence, "after pleading guilty, [defendants] claiming actual innocence must meet the clear and convincing standard." *Schmidt v. State*, 909 N.W2d 778, 797 (Iowa 2018). "[T]o succeed on a freestanding actual-innocence claim, the [defendant] must show by clear and convincing evidence that, despite the evidence of guilt supporting the conviction, no reasonable fact finder could convict [them] of the crimes for which the sentencing court found [them] guilty in light of all the evidence." *Id.*

Here, Trotter challenges the factual basis for his pleas because under his theory, Walker confirmed in writing and testified that Walker was the driver of the Ford Edge and that Trotter did not operate the vehicle at all on February 6. Therefore, Trotter contends he is actually innocent. But, regarding the interference-with-official-acts conviction, the officers confirmed that the man they

apprehended from the Ford Edge and eventually arrested was Trotter— the same person who caused the abrasions and bleeding to Sergeant Hippen's knuckles. No evidence of innocence was presented addressing this specific claim or these allegations. Because Sergeant Hippen's statements describing the injury are in the record, we find a sufficient factual basis to support the conviction for interference with official acts.

Regarding the OWI conviction, there are sufficient facts to support the conviction after reviewing the statements from the non-biased witness—Aldinger— and law enforcement officers. To meet his burden to demonstrate actual innocence, Trotter presented the testimony and statement of Walker to dispute who actually drove the vehicle. But in contrast, Aldinger reported seeing one man in the Ford Edge and that that one man was operating the vehicle: crashing it into the Toyota Highlander three times before eventually parking it sideways and leaving the parking lights on. Aldinger stayed with the vehicle until law enforcement arrived, and she did not see anyone exit the vehicle nor anyone else in the vehicle at any point. She saw the same man in the driver's seat who law enforcement eventually arrested, and she identified that man as the one she saw driving. That man was Trotter. And that man was the same person that law enforcement observed with bloodshot and watery eyes, very slurred speech, a strong odor of alcohol, and who was within arms' reach of the mini bottle of hard alcohol and an open can of beer. After the identification of Trotter by law enforcement, Aldinger informed law enforcement that he was the one she saw driving the Ford Edge. So, there is both circumstantial and direct evidence in the record to contradict Trotter's assertion that he could not have been the driver.

We find, like the district court, that a reasonable jury could have disregarded Walker's letter and testimony given that it conflicted with Aldinger's statement that there was only one person in the vehicle, Walker admitted that he could not have been driving after 9:00 p.m. yet Aldinger observed the crash around 9:40 p.m., and Walker was a close friend of Trotter's. With the circumstantial and direct evidence developed in the investigation, the court did not abuse its discretion in denying Trotter's motion in arrest of judgment because there was a factual basis to accept the guilty plea based on this information in the record, and Trotter failed to prove that he was actually innocent.

**IV. Conclusion.**

Because the record contains a factual basis to support Trotter's guilty pleas, and Trotter failed to present clear and convincing evidence of his actual innocence, the district court did not abuse its discretion in denying his motion in arrest of judgment. We affirm.

**AFFIRMED.**